# In the United States Court of Federal Claims

**No. 20-230C**
**Filed: December 10, 2021**
**Reissued for Publication: December 20, 2021[1]**

```
* * * * * * * * * * * * * * * * **
                                         *
BRANDON FUENTES,                         *
                                         *
                 Plaintiff,              *
                                         *
v.                                       *
                                         *
UNITED STATES,                           *
                                         *
                 Defendant.              *
                                         *
 * * * * * * * * * * * * * * * * **      *
```

    **Evan R. Sherwood**, Covington & Burling LLP, Washington D.C., for plaintiff.  With him were **Esther Leibfarth**, National Veterans Legal Services Program, Washington, D.C., **David Sonenshine**, National Veterans Legal Services Program, Washington, D.C., and **Shelby Anderson**, Covington & Burling LLP, Washington, D.C. **Andrew J. Henley**, Covington & Burling LLP, Washington, D.C., and **Steven J. Rosenbaum**, Covington & Burling LLP, Washington D.C., of counsel.

    **Vincent D. Phillips, Jr.**, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him were **Douglas K. Mickle**, Assistant Director, **Patricia M. McCarthy**, Director, Commercial Litigation Branch, and **Brian M. Boynton**, Acting Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C. **Jahn C. Olson**, Lieutenant Colonel, United States Marine Corps, General Litigation Division, Office of the Judge Advocate General, of counsel.

# OPINION

## HORN, J.

    The above captioned case was filed by Brandon Fuentes, a former rifleman in the United States Marine Corps (USMC) on February 28, 2020. In his original complaint, plaintiff alleged that the United States Navy (the Navy) incorrectly determined plaintiff's

---

[1] This Opinion was issued under seal on December 10, 2021. The parties were given the opportunity to propose possible redactions, but no redactions were proposed. The original Opinion is hereby unsealed and reissued without redaction.

10% disability rating when he was medically discharged from the USMC on February 1, 2019. The case was remanded to the Board for Corrections of Naval Records (BCNR), and the BCNR issued a decision on May 3, 2021 rejecting his claims to revise his allegedly incorrect disability rating and benefits compensation under 10 U.S.C. § 1201 (2018). Plaintiff filed an amended complaint in this court on July 30, 2021 seeking review of the May 3, 2021 BCNR decision. In his first amended complaint, plaintiff alleges that

> [o]n remand, the Navy's failure to consider the collective effect of Mr. Fuentes' injuries under 10 U.S.C. § 1216a(b) when determining his medical unfitness was arbitrary, capricious, unsupported by substantial evidence, or contrary to law, and thus the Navy unreasonably calculated his disability rating percentage based on less than all of those injuries, and thereby deprived him of disability retirement pay and benefits to which he was entitled under 10 U.S.C. § 1201.

## F I N D I N G S   O F   F A C T

Plaintiff served in the USMC from January 2012 until February 2019, when he received an honorable discharge on medical grounds. Plaintiff served as a rifleman for approximately six years and on limited duty as a security guard for a year. In recognition of his service, plaintiff was awarded the Navy and Marine Corps Achievement Medal, Navy Unit Commendation, Marine Corps Good Conduct Medal, National Defense Service Medal, Global War on Terrorism Extraordinary Medal (Bahrain), Global War on Terrorism Service Medal, Korean Defense Service Medal, Sea Service Deployment Ribbon, multiple letters of Appreciation, and a Meritorious Mast.[2] During his service, plaintiff "was diagnosed with three conditions — temporomandibular joint syndrome or disorder ('TMJ'), low back strain, and left knee pain."

Plaintiff alleges in January 2014, he "injured his back during a training exercise." Plaintiff asserts that while he did not immediately seek treatment for the injury, "it caused him pain during physical activity and would continue to do so throughout his career." Plaintiff also indicates he was injured on April 9, 2014 when he underwent surgery to remove three wisdom teeth, suffering severe complications including complete kidney failure, a sepsis infection, and an embolism.[3] Plaintiff states that, as a result of the sepsis,

---

[2] According to Marine Corps Order (MCO) 1650.19J, "Meritorious Masts and Letters of Appreciation also provide ways by which special acknowledgement of a Marine's performance can be recognized." MCO 1650.19J Encl. 2, ¶ 1 (Change 1, effective Nov. 13, 2012). The MCO continues that "[p]ersonal decorations should be limited to those cases in which the performance of duty was so exceptionally superior that its significance and contribution to the Marine Corps are clearly recognized by superiors and contemporaries alike." Id.

[3] Following plaintiff's oral surgery, he experienced dental pain and left-sided facial/neck swelling, resulting in his admission to the Intensive Care Unit (ICU). Radiology reports from his visit, based on head and neck Computed Tomography (CT) scans, noted "substantial left facial and left neck inflammatory subcutaneous soft tissue thickening" that was likely attributable to active infection in that region.

he developed Temporomandibular Joint syndrome (TMJ), a jaw lockage condition that causes severe pain and frequent numbness on the left side of his face. He was officially diagnosed with TMJ on August 21, 2017, by Dr. Kurt Uyehara, a year and a half before his discharge.

Separately, during an Advanced Infantry Course between October and December 2015, plaintiff states he fell down a hill and displaced a small rock that had been asymptomatically lodged in his left knee since childhood. Plaintiff sought medical treatment from the corpsman,[4] who, according to plaintiff, advised plaintiff to "take it up after deployment so it wouldn't affect my leadership abilities in my platoon and my position." After experiencing pain for approximately eight months, plaintiff sought treatment for his knee on June 23, 2016. Plaintiff went through two procedures to remove the object in July and August 2016, respectively. Following the procedures, plaintiff received physical therapy for his increased knee pain, and was placed on Temporary Limited Duty in December 2016. Plaintiff's injury did not improve during physical therapy, and he was referred to Dr. Quattrone, a Sports Medicine specialist, in February 2017, to have his injury evaluated. Dr. Quattrone referred plaintiff to a recovery specialist, who performed a "dynamic" ultrasound analysis of plaintiff's left knee and reported no obvious cause of the pain and ordered a magnetic resonance imaging (MRI) to "definitively evaluate" the presence or absence of left distal quadriceps tendinopathy. He also recommended applying Capsaicin cream to the knee, 3–4 weeks of lidocaine steroid injections, and prolotherapy injections.[5] Plaintiff went to a follow-up appointment with Dr. Constantini on March 23, 2017, during which plaintiff reported that, despite multiple treatments and therapy, plaintiff's "pain has not improved with any treatment thus far. He states he is unable to walk/run without an increase in pain." Plaintiff reported during this exam that he was not able to return to his prior activity level.

In April 2017, plaintiff followed up with Dr. Quattrone regarding his limited duty status, reporting persistent back and knee pain. Plaintiff again sought treatment for his back pain in May 2017 with Dr. Constantini, who noted that plaintiff was "NOT deployable"

---

[4] A corpsman is a medical specialist who assists "in a wide range of departments and procedures, from dispensing vaccines and analyzing lab samples to aiding in dental operations and assisting in emergency surgeries." Hospital Corpsman, AMERICA'S NAVY, https://www.navy.com/careers/hospital-corpsman (last visited Dec. 20, 2021).

[5] According to the MAYO Clinic website,

> [p]rolotherapy is a complementary treatment for muscle and joint pain. The treatment involves repeated injections of an irritant solution into part of a joint — the joint's interior, for example, or a supporting tendon or ligament. The irritant, usually a sugar solution, is thought to trigger growth in the connective tissue of the joint, eventually leading to reduced pain.

Brent A. Bauer, M.D., Prolotherapy: Solution to low back pain?, MAYO CLINIC, https://www.mayoclinic.org/prolotherapy/expert-answers/faq-20058347 (last visited Dec. 20, 2021).

based on his medical profile. (capitalization in original). Dr. Constantini reported that plaintiff's back pain was "most consistent" with injury due to increased exercise. In June 2017, plaintiff once again reported back pain during his limited duty status follow up visit, and subsequently restarted physical therapy. Further, Dr. Quattrone recommended a second round of limited duty status to give plaintiff's prolotherapy more time to work or, in the alternative, to consider referring plaintiff to the Physical Evaluation Board (PEB) for medical separation.

Section 1201 of Title 10 provides that the Secretary of the Navy, upon finding that a Service member "is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay or while absent as described in subsection (c)(3), the Secretary may retire the member, with retired pay." 10 U.S.C. § 1201(a) (2018). To qualify for medical retirement, as opposed to medical separation, the Service member must receive a 30 percent disability rating for the conditions that impair the Service member's ability to perform his or her military duties. See id. § 1201(b)(3)(B). The Department of the Navy Disability Evaluation Manual contained in SECNAVINST 1850.4E governed the disability process for members of the USMC. See SECNAVINST 1850.4E (2002).[6] SECNAVINST 1850.4E states that the disability evaluation process begins with a Medical Evaluation Board (MEB), which must find that the Service member's fitness for continued service in the USMC is "questionable by reason of physical or mental impairment." SECNAVINST 1850.4E Encl. 3, § 3201(a). As explained in SECNAVINST 1850.4E, an MEB is comprised of physicians and is convened to "evaluate and report on the diagnosis; prognosis for return to full duty; plan for further treatment, rehabilitation, or convalescence; estimate of the length of further disability; and medical recommendation for disposition of such members." SECNAVINST 1850.4E Encl. 2, § 2043. As further explained on the MEB page of the Military Health System (MHS) website:

The Medical Evaluation Board (MEB) is a process designed to determine whether a Service member's long-term medical condition enables him/her to continue to meet medical retention standards, in accordance with military service regulations. It also provides an opportunity for military physicians to clearly document all care and treatments received prior to MEB referral and any duty limitations their condition may cause.

The MEB is considered an informal board because, by itself, it does not drive any personnel actions. The findings of the MEB are referred to the Physical Evaluation Board (PEB), which formally determines fitness for continued service and eligibility for disability compensation. The MEB is convened once the medical retention decision point is reached or when the Service member's physician thinks the Service member will not be able to return to duty for medical reasons. The board evaluates a Service member's medical history and condition, documents the extent of the injury or illness,

[6] SECNAVINST 1850.4E was in effect from April 30, 2002 until June 27, 2019, when it was superseded by SECNAVINST 1850.4F (2019).

and decides whether the Service member's medical condition is severe enough to impede his/her ability to continue serving in a full duty capacity.[7]

(capitalization in original).

According to the MHS website, if the MEB "determines the Service member does not meet retention standards for his/her military occupational specialty (MOS)/military occupational classification (MOC), then the Service member will be referred to a Physical Evaluation Board (PEB)."[8] The MHS website further notes that the PEB also determines a Service member's fitness or unfitness to continue military service, eligibility for disability compensation, disability codes, and percentage rating. The "sole standard" the PEB uses "in making determinations of physical disability as a basis for retirement or separation is unfitness to perform the duties of office, grade, rank or rating because of disease or injury incurred or aggravated while entitled to basic pay." SECNAVINST 1850.4E Encl. 3, § 3301. The PEB shall review all relevant medical and non-medical records, including medical board reports, non-medical assessments, performance evaluations, and health records. See SECNAVINST 1850.4E Encl. 1, § 1004(b); Encl. 4, § 4209. Upon a finding of unfitness, the PEB may separate or retire the Service member depending on the Service member's disability rating. As noted above, if the PEB, using the VA rating schedule, finds that the Service member is more than 30 percent disabled, he or she will be medically retired with retired pay. See 10 U.S.C. §§ 1201(a)–(b)(3)(B); 38 C.F.R. Part 4 (2020).

From September 2016 to June 2018, the Navy's Disability Evaluation System process was governed by the Properly Referred Policy. See SECNAVCORB Policy Letter 2016-1; SECNAVCORB Policy Letter 2017-4; SECNAVCORB Policy Letter 2018-1. Under the Properly Referred Policy, which was issued by the Navy Council of Review Boards (CORB), the PEB did not consider a Service member's conditions unless they were "properly referred" by an MEB. See SECNAVCORB Policy Letter 2017-4 ¶¶ 4(a), 5 (2017). Under the Properly Referred Policy, a condition was "properly referred" only if it was "specifically addressed in a Medical Evaluation Report, Narrative Summary, or an appropriate Medical Addendum." Id. ¶ 4(a). Further, "[a]ll referred conditions must appear on a single NAVMED Form 6100/1 [Medical Board Report Cover Sheet], which must be digitally signed and dated by the Convening Authority after the MEB has concluded." Id. ¶ 4(c) (alteration added). Under the Properly Referred Policy, "[c]onditions presented to the PEB via any other means are not considered to be properly referred and will not be

---

[7] Medical Evaluation Board, HEALTH.MIL,
https://www.health.mil/Military-Health-Topics/Access-Cost-Quality-and-Safety/Access-to-Healthcare/DoD-VA-Sharing-Initiatives/Disability-Evaluation/Medical-Evaluation   (last visited Dec. 20, 2021).

[8] Physical Evaluation Board, HEALTH.MIL,
https://www.health.mil/Military-Health-Topics/Access-Cost-Quality-and-Safety/Access-to-Healthcare/DoD-VA-Sharing-Initiatives/Disability-Evaluation/Physical-Evaluation   (last visited Dec. 20, 2021).

considered. If Service members desire to have additional conditions referred by the MEB, they must work with their commands, treating providers, PEB Liaison Officers, and counsel to seek NARSUM [Narrative Summary] addenda and an updated NAVMED [Medical Board Report Cover Sheet] Form 6100/1 in a timely manner." Id. (alteration added).

In June 2018, the Navy rescinded the Properly Referred Policy. See SECNAVCORB Policy Letter 2018-3, ¶ 1. Plaintiff explains that "[t]he policy was withdrawn after an objection from the Disability Evaluation System Counsel, which explained in a January 23, 2018 memorandum that the policy violated 10 U.S.C. § 1216a, which requires the consideration of 'all medical conditions.'" Further, as discussed below, Department of Defense Instruction (DoDI) 1332.18, the DoD policy that interprets 10 U.S.C. § 1216a (2018), requires the PEB to consider the combined effect of a Service member's conditions even when each condition, standing alone, would be insufficient to render the Service member unfit. DoDI 1332.18 Enc. 3, Appx. 2, ¶ 4(d) (Change 1, Effective May 17, 2018) ("[C]ombined effect includes the pairing of a singularly unfitting condition with a condition that standing alone would not be unfitting.").

After rescinding the Properly Referred policy, however, the Navy declined to provide any retroactive relief to Service members who claimed that the policy had resulted in the wrongful denial of their medical retirement. See generally Torres v. Del Toro, No. 1:21-cv-306-RCL, 2021 WL 4989451 (D.D.C. Oct. 27, 2021) (granting a Service member's motion for class certification to bring a class action law suit against the Navy for its alleged wrongful policy to continue to deny relief given the revoked Properly Referred Policy. The District Court has not yet issued a decision on the merits of the case).

On June 12, 2017, plaintiff's Commanding Officer submitted a Non-Medical Assessment (NMA) in which he recommended that an MEB find plaintiff unfit for continued service as a marine. Plaintiff's Commanding Officer stated that "[d]ue to his medical condition, [plaintiff] cannot do the basic requirements of a rifleman." The Commanding Officer further noted that plaintiff "cannot take a PFT, CFT [Physical Fitness Test, Combat Fitness Test], or conduct rigorous field training. His condition prevented him from going on the battalion deployments to Pohakula Training Area (Oct-Nov 16), Integrated Training Exercise 2-17 Jan-Feb 17) or the Forward Deployed Forces deployment (June-Dec 2017) to Okinawa, Japan." (alteration added).

According to plaintiff, on "July 26, 2017, Dr. Ravi D. Reddy, a physician at the Military Treatment Facility ('MTF') Naval Health Clinic Hawaii, in coordination with Mr. Fuentes' commander, referred plaintiff to the Integrated Disability Evaluation System ('IDES') to determine if he should be retired by reason of disability for left knee pain." The IDES is "a joint DoD-VA process by which the DoD determines whether ill or injured Service members are fit for continued service and DoD and VA determine appropriate benefits for Service members who are separated or retired for disability." See "IDES," DoDI 1332.18, Glossary, Part II, p. 56. Unlike prior cases under the Legacy DES system, the IDES merged

DoD and VA's separate exam processes into a single exam process conducted to VA standards. This single exam—which may involve more than one medical examination (for example, by different specialists)—in conjunction with the servicemembers' medical records, is used by military service PEBs to make a determination of servicemembers' fitness for continued military service, and by VA as evidence of service-connected disabilities.

U.S. GOV'T ACCOUNTABILITY OFF., GAO-11-69, MILITARY AND VETERANS DISABILITY SYSTEM: PILOT HAS ACHIEVED SOME GOALS, BUT FURTHER PLANNING AND MONITORING NEEDED 6 (2010).

As part of the IDES process, Dr. Robert Sussman, a family practitioner under contract at the Department of Veterans Affairs (VA), diagnosed plaintiff with thoracolumbar spine (back) injury based on objective evidence of a "lumbosacral strain," i.e., a lower back injury. Dr. Sussman indicated that the injury dated back to 2014 and had generally "gotten worse" over time. Dr. Sussman evaluated plaintiff's range of motion, which he reported as "abnormal." Dr. Sussman further indicated that a healthy adult can flex his spine at least 90 degrees; plaintiff, a 24-year-old Marine, could only flex to 45 degrees, which is only half the normal range. Dr. Sussman also recorded that plaintiff could only extend his spine backward 20 degrees, but a healthy adult can reach at least 30 degrees.

As part of the evaluation process, the VA contacted a dentist, Dr. Kurt Uyehara, to examine plaintiff's jaw locking and related symptoms. Dr. Uyehara diagnosed plaintiff with TMJ due to sepsis, noting that plaintiff suffered severe jaw pain such that "[h]e can not [sic] chew for long periods of time," and that his "jaw locks for period[s] of time making it difficult to talk." According to plaintiff, the VA issued an IDES Proposed Rating in which it "assigned a 30 percent evaluation for your temporomandibular articulation [TMJ]," "a 20 percent evaluation for your lumbosacral strain (also claimed as lower back injury)," and "a 10 percent evaluation for your left knee strain, status post removal of foreign body (also claimed as left knee pain and left knee surgery.)" Despite the VA's recommendation, Dr. Reddy, plaintiff's referring physician, mentioned only plaintiff's left knee injury in the final IDES narrative summary (NARSUM) signed on September 8, 2017. Dr. Reddy's report does not mention plaintiff's other potentially unfitting conditions, including low back injury and TMJ disorder.

The Navy convened a MEB regarding plaintiff on September 6, 2017. The MEB found that plaintiff had "significant difficulties completing common tasks of a rifleman including carrying heavy weight, running, digging trenches for wire, CFT/PFT [Combat Fitness Test/Physical Fitness Test]." The MEB referred plaintiff's case to an informal PEB to decide whether to grant plaintiff a medical separation and retirement from the USMC. On January 3, 2018, the informal PEB found plaintiff medically unfit for duty. The informal PEB found that plaintiff had a "confirmed diagnosis" of a left knee injury that did not respond to rehabilitation, therapy, and medication. The informal PEB also observed that plaintiff's left knee injury made it difficult for him to run, march, or carry loads, such that his condition "interfere[d] significantly" with his ability to perform his military duties. The informal PEB addressed only plaintiff's left knee injury and did not evaluate his back or

his TMJ issues. Under the Navy's then existing "Properly Referred Policy," the informal PEB could consider only those medical conditions that had been referred to the informal PEB by the MEB. See SECNAVCORB Policy Letter 2017-4 ¶¶ 4(a), 5. Because the MEB did not refer plaintiff's low back and jaw injuries to the informal PEB, the informal PEB did not consider his back and jaw injuries when deciding whether to grant plaintiff medical retirement based on his back and jaw issues.

Plaintiff attempted unsuccessfully to broaden the scope of the informal PEB's and the formal PEB's review to include his other medical conditions. On January 24, 2018, plaintiff petitioned the informal PEB for a hearing before the formal PEB to challenge the informal PEB's fitness determinations and specifically requested that the formal PEB consider his TMJ diagnosis. Plaintiff appeared before the formal PEB on March 14, 2018, at which time "Mr. Fuentes' counsel raised formal objections asserting the legal invalidity of the Properly Referred Policy, and urged the PEB to consider Mr. Fuentes' other conditions." In addition, plaintiff testified at the formal PEB hearing that his TMJ and related jaw pain caused him to avoid chewy items packed in standard military rations, which impacted his performance in the field. Colonel Kuchinado, the presiding officer for the formal PEB, noted for the record "that the second condition, TMJ, by record here and the evidence available to the Board is not a properly referred condition and, therefore, the Board will be unable to make a determination on that condition." On April 3, 2018, the formal PEB found plaintiff medically unfit to continue military service due to his left knee injury only. On March 8, 2018, before the formal PEB hearing, plaintiff requested that the informal PEB terminate the proceedings to permit him to raise all potentially unfitting conditions, including low back strain and TMJ. The informal PEB denied this request on March 13, 2018, the day before the formal PEB hearing, stating, in a handwritten note, only that "[a] review of current medical evidence does not warrant case termination."

On June 12, 2018, the CORB cancelled the Properly Referred Policy. See SECNAVCORB Policy Letter 2018-3, ¶ 1. The CORB

> is an administrative activity within the Department of the Navy (DON) assigned to the Assistant Secretary of the Navy (Manpower and Reserve Affairs) (ASN(M&RA)) for supervision and support. Our mission is to review cases, conduct hearings, and render decisions on behalf of the Secretary of the Navy in a fair, timely, and transparent manner, considering both the needs of the service and the rights of the individual.

See Welcome to the SECNAVCORB, COUNCIL OF REVIEW BOARDS (CORB), https://www.secnav.navy.mil/mra/CORB/Pages/default.aspx (last visited Dec. 20, 2021). The Director of the CORB has "overall responsibility for the management, operation, and integrity of all component boards."[9] Moreover, the Director of the CORB "shall issue such

---

[9] The CORB includes the Physical Evaluation Board (PEB), the Combat-Related Special Compensation Board (CRSCB), the Navy Complaints Review Board (NCRB), the Navy Clemency and Parole Board (NCPB), the Navy Department Board of Decorations and Medals (NDBDM), and the Disability Review Board (DRB). Welcome to the SECNAVCORB, COUNCIL OF REVIEW BOARDS (CORB), https://www.secnav.navy.mil/mra/CORB/Pages/default.aspx (last visited Dec. 20, 2021).

instructions as are necessary to further define and implement the organization and mission of the SECNAVCORB."[10]

On June 21, 2018, plaintiff filed a Petition for Relief (PFR) with the CORB in which he requested a new formal PEB "to present all potentially unfitting conditions" or, in the alternative, a finding that he was "unfit for Temporomandibular Joint Capsulitis, Left Knee Pain, and Chronic Low Back Pain," thus entitling him to placement on the Permanent Disability Retired List. Plaintiff argued he "was not permitted to present all of his potentially unfitting conditions at his Formal PEB due to a policy [the Properly Referred Policy] that has now changed." (alteration added). On June 26, 2018, the CORB denied plaintiff's PFR, citing the Properly Referred Policy and defending its validity by stating that the "guidance contained in that letter [SECNAVCORB Policy Letter 2016-3] was valid and was only rescinded based on a recent change in reference (b)." (alteration added). The SECNAVCORB Director denied plaintiff's request for a second formal hearing, stating

> your case has been reviewed to determine whether the additional petitioned conditions are separately or collectively unfitting. I found they are not. Neither your TMJ or LOW BACK PAIN conditions were referred by a Medical Board Report nor were they separately mentioned in the Commanding Officer's Non-Medical Assessment as limiting your ability to perform your military duties. Additionally, despite opportunity to do so, you did not rebut the Medical Board Report which did not refer TMJ or LOW BACK PAIN as separately or collectively unfitting conditions.

(capitalization in original).

On July 27, 2018, plaintiff submitted a request for reconsideration, asking for a 30 percent disability rating for his left knee injury. In support of his request, plaintiff submitted "new medical/nonmedical evidence," including: (1) a Medical Board Report, dated July 26, 2017; (2) plaintiff's Commanding Officer's NMA, dated June 12, 2017; (3) the VA's Rating Letter, dated November 25, 2017; and (4) a Compensation and Pension Examination, dated August 22, 2017. The VA's Decision Review Office, IDES Team, issued a memorandum to the President of the formal PEB in which it recommended denying plaintiff's request for a 30 percent disability rating for his left knee injury and confirming plaintiff's 10 percent disability rating. On August 23, 2018, the President of the PEB issued a reconsideration decision consistent with the VA's memorandum, in which the formal PEB concluded that plaintiff was medically unfit for continued duty due to his left knee injury and confirmed his 10 percent disability rating. The formal PEB found:

> The member has a confirmed diagnosis of left knee pain with supporting surgical/laboratory/imaging studies documentation. Treatment consisting of rehabilitation, therapy, and/or medication did not resolve the symptoms sufficiently so that the member can perform the duties of their (rank/rate/MOS) at sea, on shore or in a deployed status, the facts of which are supported by the [Commanding Officer's Non-Medical Assessment]. Of

---

[10] <u>Welcome to the SECNAVCORB</u>, Council of Review Boards (CORB), https://www.secnav.navy.mil/mra/CORB/Pages/default.aspx (last visited Dec. 20, 2021).

> special note, the member cannot perform the following duties: running,
> marching, carrying loads. Therefore, the diagnosis identified above is
> unfitting as it interferes significantly with the member's ability to carry out
> the duties of their office, grade, rank or rating.

(alteration added). The reconsideration decision stated that plaintiff's disability was
incurred while he was entitled to basic pay, was permanent, and had not occurred during
a period of unauthorized absence or because of misconduct or negligence. The formal
PEB determined that plaintiff would be medically separated under 10 U.S.C. § 1203,
which permits medical separation for disabilities rated less than 30 percent.

On February 1, 2019, plaintiff was honorably discharged from the Navy. On
February 8, 2019, plaintiff went through an "employment physical" to determine plaintiff's
post-military employability conducted by Dr. Keith Harris. Dr. Harris indicated that he was

> [o]nly noting issues related to recent MEB for L [left] knee pn [pain]. All other
> issues that have either been previously evaluated or simply do not need
> further evaluations at this time. Pt [patient] cleared for employment duties
> as tolerated and able to perform in regards [sic] to L [left] knee pn [pain].

(alteration added).

As noted above, on February 28, 2020, plaintiff filed his initial complaint in the
United States Court of Federal Claims, challenging the Navy's application of the Properly
Referred Policy and denial of his PFR as "arbitrary, capricious, unsupported by
substantial evidence, and contrary to law." In response, defendant moved for a voluntary
remand to the BCNR. In its motion for voluntary remand, defendant conceded that the
Navy had "not provide[d] a detailed analysis to support its determination that there was
no evidence that either TMJ or low back strain would have impaired Mr. Fuentes' ability
to perform his military duties." Moreover, defendant asserted that "remanding this matter
to the BCNR would allow Mr. Fuentes to have all of his evidence considered, including
any new evidence or argument that he may submit, which may result in the relief he seeks
in this litigation." This court granted defendant's motion for voluntary remand on
September 16, 2020, and directed the BCNR to

> address all issues within its authority, including any pertinent issues raised
> by the parties, including specifically whether plaintiff, Brandon Fuentes, is
> entitled to correction of his naval records concerning his claim that the Navy
> failed to properly consider whether his diagnosed low back strain and
> temporomandibular joint syndrome separately or collectively impaired his
> ability to perform his military duties.

This court further directed the BCNR to "consider any additional documents or evidence
that Mr. Fuentes wishes the BCNR to consider during the remand proceedings, including
an application for the correction of his military record with the BCNR."

On remand, plaintiff requested that the BCNR correct his military records to reflect
that he qualified for medical retirement based on a disability rating of at least 30 percent.
To support his request, plaintiff submitted evidence from his service records that indicated
that his back injury impeded his ability to perform the basic requirements of a USMC

infantryman. Plaintiff also submitted additional documentation, including an expert opinion of Dr. Daniel Slawski, an orthopedic surgeon and United States Air Force veteran, dated November 25, 2020. Dr. Slawski reviewed "documents contained in the administrative record that were assembled by the Navy/USMC in connection with this litigation" and concluded that plaintiff's back condition limited his ability to perform his military duties. Dr. Slawski reported that the "dynamic force of a 100–200 pound combat load carried on the back while running creates extreme compressive and torsional stresses on the lumbar region," which exacerbated the existing "mechanical disadvantage" of plaintiff's knee injury. Dr. Slawski indicated that this endangered not only plaintiff's health, but also that of his fellow Marines. Further, Dr. Slawski stated that, at the time of his referral to the IDES, plaintiff was not able to perform the basic duties of a rifleman "strictly on the basis of his lumbar spine pain even without taking into consideration his left knee limitations." Based on his records and Dr. Slawski's review, plaintiff asserts that the "combined effect of Mr. Fuentes' left knee and lower back injuries therefore inhibited Mr. Fuentes' ability to perform the tasks associated with his duties as a rifleman, including further deployments/field exercises and completion of the required physical fitness tests."

On remand, the defendant relied on a CORB Advisory Opinion that recommended that the BCNR deny plaintiff's requested relief. The CORB reviewed plaintiff's medical records and ultimately concluded in an Advisory Opinion that plaintiff could not, by a preponderance of the evidence, show "that he was unfit for continued naval service due to left knee pain, low back pain and Temporomandibular Joint (TMJ) Capsulitis." The CORB noted that plaintiff's back pain had been evaluated only twice throughout his service. The CORB stated, on August 12, 2017, that plaintiff "presented to Dr. L. Constantini with 'bilateral mid back pain with concern for decreased kidney function due to history of sepsis and ICU stay a couple years ago.'" The CORB quoted Dr. Constantini's report from plaintiff's visit to the emergency room, which stated that plaintiff's "[p]ain most consistent with back pain due to increased exercising as patient is on BCP [Body Composition Program] and is trying to lose weight," (alteration added), and not due to decreased kidney function. At the time in 2017, plaintiff was advised to manage his symptoms with warm heat and stretching. The CORB Advisory Opinion also indicated that plaintiff presented to the Tripler Army Medical Center Emergency Department on March 21, 2018, complaining of "bilateral kidney pain." The treating physician diagnosed plaintiff with "Lumbar Back Pain Associated with Muscle Strain and prescribed acetaminophen (Tylenol)." The treating physicians did not find radiologic imaging or any duty limitation necessary at the time. Further, the CORB Advisory Opinion noted that "[t]here is no record of physical limitations or duty restrictions specific to Low Back Pain or an analogous condition within the active duty treatment record."

The BCNR sent the CORB Advisory Opinion to plaintiff with a "Request to Mr. Fuentes for Comments dtd [dated] 7 Dec 20[20]." (alteration added). In the letter, the BCNR stated, "[i]f you wish to submit any further statement or additional documentary material in support or your application, it is requested that you transmit same [sic] directly to this Board." In response, plaintiff submitted a letter to the BCNR on April 16, 2021, along with additional medical documentation of his injuries and Dr. Slawski's analysis, dated April 7, 2021. Dr. Slawski stated that between his first and second opinions, dated

November 25, 2020, and April 7, 2021 respectively, his "overall opinion has not changed, and is even further supported by a current MRI of the lumbar spine." Dr. Slawski reported that plaintiff's MRI results

> [d]emonstrated mild facet arthropathy at both L3-L4 and L4-L5 as well as moderate to severe arthropathy at L5-S1. There was significant L5-S1 disc desiccation with a left foraminal disc extrusion which, in combination with the facet arthropathy, resulted in a mass effect compression on the L5 nerve. The changes noted are chronic in nature and would be most consistent with compressive/torsional injuries in the lower back which occurred during the time frame Mr. Fuentes was on active duty. In addition, the pathology resulting from these injuries would be expected to produce lumbar (back) pain, left sacroiliac pain, limitation in lower back motion and a left L5 radiculopathy (of which Dr. James Fernandez, the interpreting radiologist was particularly concerned).

According to Dr. Slawski, the MRI results are objective evidence of a chronic back condition that prevented plaintiff from performing his duties as a USMC rifleman.

On May 3, 2021, the BCNR denied plaintiff relief, but recognized that "the VA diagnosed you with a thoracolumbar spine injury based on range of motion, discomfort, and pain avoidance" and "Temporomandibular Joint Capsulitis (TMJ) based on objective evidence of pain in your jaw." The BCNR noted plaintiff's multiple attempts to have the PEB and CORB consider his TMJ and back conditions in addition to his left knee injury, and that only his left knee injury was considered in determining whether he was eligible for disability retirement. The BCNR also indicated that "a member may be found unfit if their disability represents a decided medical risk to the health or the member or to the welfare or safety of other members; or the member's disability imposes unreasonable requirements on the military to maintain or protect the member." Moreover, the BCNR reported that "the combined effect of two or more disabling conditions may result in a finding of unfitness even though each of the conditions, standing alone, would not qualify for referral to the Disability Evaluation System or a finding of unfitness." In coming to its decision, the BCNR acknowledged, but did not evaluate, certain medical opinions and records that might have supported plaintiff's claims that his other disabilities impacted his ability to perform his duties, to include "carrying heavy weight, running, digging trenches, and performing the Combat Fitness Test and Physical Fitness Test." In other words, the BCNR acknowledged that plaintiff submitted two expert medical opinions and supporting MRI results that confirm that plaintiff continues "to suffer from conditions related to your spine," but did not specifically state why the BCNR did not find this evidence significant.

The BCNR, however, concluded summarily, and in general terms, "that the preponderance of the evidence does not support a finding that your back condition was separately unfitting." The BCNR also stated that "the Board felt the preponderance of the evidence did not support a finding that your TMJ condition met any of the criteria for unfitness for continued naval service." The BCNR "found that the medical evidence supported the Navy's decision not to refer your TMJ to a medical board or the PEB."

After the BCNR's denial on remand, plaintiff filed an amended complaint in this court on July 30, 2021. In his amended complaint, plaintiff challenges the BCNR's decision, following remand, arguing that

> the Navy's failure to consider the collective effect of Mr. Fuentes' injuries under 10 U.S.C. § 1216a(b) when determining his unfitness was arbitrary, capricious, unsupported by substantial evidence, or contrary to law, and thus the Navy unreasonably calculated his disability rating percentage based on less than all of those injuries, and thereby deprived him of disability retirement pay and benefits to which he was entitled under 10 U.S.C. § 1201.

Plaintiff also asserts that the Navy's decision that plaintiff's TMJ and back strain "did not render him medically unfit or contribute to his medical unfitness was arbitrary, capricious, unsupported by substantial evidence, or contrary to law, and thereby deprived Mr. Fuentes of disability retirement pay and benefits to which he was entitled under 10 U.S.C. § 1201." Plaintiff states that this court has jurisdiction over his complaint pursuant to 10 U.S.C. § 1201.

The same day plaintiff filed the amended complaint, July 30, 2021, plaintiff filed a motion for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims (2021) (RCFC). Plaintiff asserted that it "is undisputed that Mr. Fuentes suffers from injuries to his left knee, lower back, and jaw, and that these injuries are 10%, 20%, and 30% disabling under applicable regulations." Plaintiff argues that "[t]he record here shows that Mr. Fuentes' back and jaw injuries render him unfit, either individually or when considered in combination with his undisputed knee injury." Plaintiff, quoting the words of Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983), argues that the "BCNR's decision should be reversed" because the BCNR's decision was "'arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the plaintiff] has been seriously prejudiced.'" (alteration in original).

Defendant filed a motion to dismiss under RCFC 12(b)(6) (2021), as well as a cross-motion for judgment on the administrative record and a response to plaintiff's motion for judgment upon the administrative record. Defendant argues that plaintiff "raises non-justiciable issues in challenging the merits of the Navy's determination that his low back strain and TMJ syndrome do not render him unfit to serve." In the alternative, defendant argues that "the Court should grant judgment in favor of the United States because the record supports the BCNR's decision that these two conditions did not render him unfit for continued service in the United States Marine Corps, and the remand decision was in accordance with applicable law." In support of this argument, defendant states that plaintiff "failed to demonstrate that the BCNR did not evaluate his low back strain collectively to determine if it was unfitting," and that the "BCNR did not err in determining that [plaintiff's] low back strain was not separately unfitting." (alteration added). Defendant also contends that "[t]he BCNR did not err in finding that Mr. Fuentes' TMJ syndrome was not separately or collectively unfitting."

Plaintiff filed a reply in support of his motion for judgment on the administrative record and a response to defendant's cross motion. Plaintiff argues that the BCNR "unreasonably concluded that Mr. Fuentes does not qualify for medical retirement under 10 U.S.C. § 1201" because it "failed to apply the correct legal standard, which required it to consider whether Mr. Fuentes' spinal and jaw injuries render him unfit to reasonably perform the duties of a Marine rifleman, either alone or when considered collectively and with his knee injury." (citing Brown v. United States, 735 F. App'x 1003, 1035 (Fed. Cir. 2018);[11] 10 U.S.C. § 1201; 10 U.S.C. § 1216a(b); DoDI 1332.18 Encl. 3, Appx. 2, ¶ 4(d) (Change 1, Effective May 1, 2018)). According to plaintiff, "[t]he Government cannot show that the BCNR considered the full record in the case." Plaintiff also argues that "[t]here is no merit to the Government's argument" about plaintiff's medical expert, who indicated that plaintiff's back injury rendered him unfit to carry out the basic duties of a marine rifleman. Finally, plaintiff argues that "[t]here is no merit in the government's *post hoc* recasting of Dr. Sussman's August 2017 report." (emphasis in original). Dr. Sussman, who examined plaintiff in August 2017, reported that plaintiff was not able "to bend lift push pull walk run squat or crawl in a prolonged or repetitive manner." According to plaintiff, defendant asserts that "Dr. Sussman's report states that it would be 'mere speculation' to conclude that Mr. Fuentes' 'limited range of motion' would lead to any occupational impairment," but that in reality, "Dr. Sussman's report said that Mr. Fuentes' '[p]ain avoidance prevents full range of motion and inability to use the joint in a prolonged or repetitive manner.'" (alteration in original).

Defendant filed a reply in support of its motion to dismiss and cross-motion for judgment on the administrative record. In its reply, defendant argues that that "BCNR did not apply an incorrect legal standard" and that "[t]here are no fatal gaps in the BCNR's reasoning." Further, defendant argues that "[t]he BCNR's decision that Mr. Fuentes's low back strain and TMJ syndrome did not contribute to his unfitness is supported by the record and should be afforded deference under the law." Finally, defendant argues that "[t]he Court's Authority to 'correct' records does not authorize it to make fitness determinations." After briefing was complete, the court held oral argument.

## D I S C U S S I O N

In the case currently before the court, Mr. Fuentes challenges the BCNR's May 3, 2021 decision on remand, which denied his application for correction of his naval records. Initially, defendant argues that plaintiff's case presents a nonjusticiable question because "it challenges the Secretary's discretion to determine the fitness of a Service member." "In the military arena, because of the admonition against court interference with military matters, see Orloff v. Willoughby, 345 U.S. 83, 94, 73 S. Ct. 534, 97 L. Ed. 842 (1953), justiciability is an especially appropriate inquiry." Roth v. United States, 378 F.3d 1371, 1385 (Fed. Cir. 2004) (citing Adkins v. United States, 68 F.3d 1317, 1322 (Fed. Cir. 1995)

---

[11] Brown v. United States, is an unreported decision issued by the United States Court of Appeals for the Federal Circuit, in which the Federal Circuit remanded the case for the Army to consider whether plaintiff's injuries collectively rendered him medically unfit. See Brown v. United States, 735 F. App'x at 1035.

(quoting Murphy v. United States, 993 F.2d 871, 872 (Fed. Cir. 1993))); see also Lowry v. United States, 153 Fed. Cl. 300, 315 (2021), recons. on other grounds, 2021 WL 4888874 (Fed. Cl. Ct. Oct. 19, 2021); Houghtling v. United States, 114 Fed. Cl. 149, 157 (2013); Strickland v. United States, 69 Fed. Cl. 684, 698 ("The United States Court of Appeals for the Federal Circuit repeatedly has emphasized the duty of the court, in cases concerning military personnel and benefits, to be mindful of the import of the doctrine of justiciability, i.e., whether the dispute is one within the competency of the court."), subsequent determination, 73 Fed. Cl. 631 (2006). Justiciability depends on whether "'the duty asserted can be judicially identified and its breach judicially determined, and . . . protection for the right can be judicially molded.'" Adkins v. United States, 68 F.3d at 1322 (quoting Baker v. Carr, 369 U.S. 186, 198 (1962)); see also Murphy v. United States, 993 F.2d at 872; Lippmann v. United States, 127 Fed. Cl. 238, 243 (2016); Volk v. United States, 111 Fed. Cl. 313, 324–25 (2013). Accordingly, a "controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" Voge v. United States, 844 F.2d 776, 780 (Fed. Cir. 1988) (quoting Greene v. McElroy, 254 F.2d 944, 953 (D.C. Cir. 1958), rev'd on other grounds, 360 U.S. 474 (1959)); see also Lippman v. United States, 127 Fed. Cl. at 243 (quoting Voge v. United States, 844 F.2d at 780) (finding that a claim was not justiciable because "[p]laintiff is effectively asking this court to second guess the sentence decided by the special court-martial members, something for which there are no 'tests or standards [it] can soundly administer within [its] special field of competence.'") (alteration in original); Miglionico v. United States, 108 Fed. Cl. 512, 520–21 (2012) (citations omitted).

"The general rule is that the determination of who is fit for military service is committed to the Executive branch." Lee v. United States, 32 Fed. Cl. 530, 540 (1995) (citing Maier v. Orr, 754 F.2d 973, 982 (Fed. Cir. 1985)); see also Orloff v. Willoughby, 345 U.S. at 93 ("[J]udges are not given the task of running the Army."); Heisig v. United States, at 1156 ("It is equally settled that responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." (footnotes omitted)); Taylor v. United States, 33 Fed. Cl. 54, 58 (1995). The United States Court of Appeals for the Federal Circuit has recognized "there are 'thousands of [ ] routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with.'" Murphy v. United States, 993 F.2d at 873 (alteration in original) (quoting Voge v. United States, 844 F.2d at 780); see also Pittman v. United States, 135 Fed. Cl. 507, 538 (2017) ("Routine military personnel decisions are not justiciable, even if they are collateral consequences from other, challenged proceedings."); Antonellis v. United States, 106 Fed. Cl. 112, 115 (2012) (citation omitted), aff'd, 723 F.3d 1328 (Fed. Cir. 2013). The United States Court of Appeals for the Federal Circuit also has "consistently recognized that, although the merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy." Adkins v. United States, 68 F.3d at 1323 (emphasis in original) (citing Murphy v. United States, 993 F.2d at 873; Dodson v. Dep't of Army, 988 F.2d 1199, 1207 n.7, reh'g denied (Fed. Cir. 1993)); see also Kennedy v. United States,

845 F.3d 1376 (Fed. Cir. 2017) (quoting Kennedy v. United States, 124 Fed. Cl. 309, 329 (2017) (The merits of Mr. Kennedy's case were not justiciable because they "pertained to who should be permitted to serve in the Marine Corps, [which is] solely within the province of the Navy," but allowing judicial review of Mr. Kennedy's arguments which "questioned whether a statute or regulation had been violated in connection with his disenrollment from NROTC.") (alteration added); Miller v. United States, 120 Fed. Cl. 772, 781 (2015) (quoting Adkins v. United States, 68 F.3d at 1323). Judicial review, therefore, is appropriate when "the Secretary's discretion is limited, and Congress has established 'tests and standards' against which the court can measure his conduct." Murphy v. United States, 993 F.2d at 873 (citing Sargisson v. United States, 913 F.2d 918, 922 (Fed. Cir. 1990); and Voge v. United States, 844 F.2d at 780); see also Adkins v. United States, 68 F.3d at 1323 (citing Murphy v. United States, 993 F.2d at 873); Houghtling v. United States, 114 Fed. Cl. at 157 (citing Murphy v. United States, 993 F.2d at 873); Antonellis v. United States, 106 Fed. Cl. at 115 (quoting Murphy v. United States, 993 F.2d at 873); Taylor v. United States, 33 Fed. Cl. at 58 (citing Murphy v. United States, 993 F.2d at 873). "Even when that discretion is unlimited, however, the military is 'bound to follow its own procedural regulations if it chooses to implement some.'" Houghtling v. United States, 114 Fed. Cl. at 157 (quoting Murphy v. United States, 993 F.2d at 873); see also Baude v. United States, 955 F.3d 1290, 1298 (Fed. Cir. 2020) (quoting Fisher v. United States, 402 F.3d 1167, 1177 (Fed. Cir. 2005) ("A court may decide whether the military has complied with procedures set forth in its own regulations because those procedures by their nature limit the military's discretion." (citation omitted)); see also Godwin v. United States, 338 F.3d 1374, 1376–79 (Fed. Cir. 2003); Meyer v. United States,127 Fed. Cl. 372, 381 (2016)).

Regarding defendant's motion to dismiss for failure to state a claim, pursuant to RCFC 12(b)(6), when examining what must be pled in order to state a claim, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2) (2021); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The United States Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [Conley v. Gibson, 355 U.S. 41, 47 (1957)]; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, e.g., Swierkiewicz v. Sorema N.A.,

534 U.S. 506, 508, n.1 (2002); <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely") . . . . [W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555–56, 570 (footnote and other citations omitted; omissions in original); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555–57, 570); <u>First Mortg. Corp. v. United States</u>, 961 F.3d 1331, 1339 (Fed. Cir. 2020); <u>Am. Bankers Ass'n v. United States</u>, 932 F.3d 1375, 1380 (Fed. Cir. 2019); <u>Frankel v. United States</u>, 842 F.3d 1246, 1249 (Fed. Cir. 2016); <u>A&D Auto Sales, Inc. v. United States</u>, 748 F.3d 1142, 1157 (Fed. Cir. 2014); <u>Bell/Heery v. United States</u>, 739 F.3d 1324, 1330 (Fed. Cir.), <u>reh'g</u> and <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir. 2014); <u>Kam-Almaz v. United States</u>, 682 F.3d 1364, 1367 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 557)); <u>Totes-Isotoner Corp. v. United States</u>, 594 F.3d 1346, 1354–55 (Fed. Cir.), <u>cert.</u> <u>denied</u>, 562 U.S. 830 (2010); <u>Bank of Guam v. United States</u>, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 557)), <u>reh'g</u> and <u>reh'g</u> <u>en</u> <u>banc</u> <u>denied</u> (Fed. Cir. 2009), <u>cert.</u> <u>denied</u>, 561 U.S. 1006 (2010); <u>Cambridge v. United States</u>, 558 F.3d 1331, 1335 (Fed. Cir. 2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 570)); <u>Cary v. United States</u>, 552 F.3d 1373, 1376 (Fed. Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555, 570)), <u>reh'g</u> <u>denied</u> (Fed. Cir.), <u>cert.</u> <u>denied</u>, 557 U.S. 937 (2009); <u>Christen v. United States</u>, 133 Fed. Cl. 226, 229 (2017); <u>Christian v. United States</u>, 131 Fed. Cl. 134, 144 (2017); <u>Vargas v. United States</u>, 114 Fed. Cl. 226, 232 (2014); <u>Fredericksburg Non-Profit Hous. Corp. v. United States</u>, 113 Fed. Cl. 244, 253 (2013), <u>aff'd</u>, 579 F. App'x 1004 (Fed. Cir. 2014); <u>Peninsula Grp. Capital Corp. v. United States</u>, 93 Fed. Cl. 720, 726–27 (2010), <u>appeal</u> <u>dismissed</u>, 454 F. App'x 900 (Fed. Cir. 2011); <u>Legal Aid Soc'y of N.Y. v. United States</u>, 92 Fed. Cl. 285, 292, 298 n.14 (2010).

When deciding a case based on a failure to state a claim, the court "must accept as true the factual allegations in the complaint." <u>Engage Learning, Inc. v. Salazar</u>, 660 F.3d 1346, 1355 (Fed. Cir. 2011); <u>see also</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 555–56 (citing <u>Swierkiewicz v. Sorema N. A.</u>, 534 U.S. at 508 n.1))); <u>Scheuer v. Rhodes</u>, 416 U.S. at 236 ("Moreover, it is well established that, in passing on a motion

to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984); Am. Bankers Ass'n v. United States, 932 F.3d at 1380 ("In reviewing a motion to dismiss, we accept as true the complaint's well-pled factual allegations; however, we are not required to accept the asserted legal conclusions." (citing Ashcroft v. Iqbal, 556 U.S. at 678)); Harris v. United States, 868 F.3d 1376, 1379 (Fed. Cir. 2017) (citing Call Henry, Inc. v. United States, 855 F.3d 1348, 1354 (Fed. Cir. 2017)); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003).

In the case currently before the court, plaintiff requests as relief, not reinstatement in the military, but rather a revised disability rating that he argues he should have received when he was discharged from the military, and that the court should "find that the BCNR's decision was arbitrary, capricious, unsupported by substantial evidence, and contrary to law." In the amended complaint, plaintiff requests that the court remand this case to the Navy with directions to:

    a. Correct Mr. Fuentes' records to reflect at least a 30% disability rating under 10 U.S.C. § 1201, due to his 20% disabling spine injury, 30% disabling jaw injury, and 10% disabling knee injury;

    b. Provide him with disability compensation and benefits under 10 U.S.C. § 1201;

    c. Provide any other relief that the Court deems appropriate.

Defendant argues that the "crux of Mr. Fuentes' case is his assertion that the BCNR erred in not reaching a conclusion that he should have been deemed unfit for service as a result of his low back strain and TMJ syndrome." Defendant continues that this case "is a challenge to the merits of the BCNR's conclusion that he was not unfit as a result of these other two conditions, but such a challenge is beyond the judicial province." Defendant relies on Sargisson v. United States, which states that a "controversy is justiciable only if it is one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence." Sargisson v. United States, 913 F.2d at 922 (quotation omitted). When the merits of a final military decision are challenged, the court is obligated first to consider the justiciability of the legal question presented. See, e.g., Orloff v. Willoughby, 345 U.S. at 93–94 ("[J]udges are not given the task of running the [military]. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates.") (alteration added). Defendant argues the "merits of the military's decisions to release a Service member from active duty are non-justiciable," and states that "[t]he Federal Circuit has held that 'determining who is fit or unfit to serve in the armed services is not a judicial province, and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach different conclusions on the same evidence.'" (quoting Heisig v. United States, 719 F.2d at 1156). To bolster its

arguments, defendant also cites Allphin v. United States, 758 F.3d 1336, 1341 (Fed. Cir. 2014); Adkins v. United States, 68 F.3d at 1322; and Murphy v. United States, 993 F.3d at 874. At oral argument, defendant also asserted that because plaintiff sought "a determination from the Court in the first instance that he should be found unfit for these other two conditions, his low back pain and his TMJ syndrome," the "Court does not have the ability to, in the first instance, award Mr. Fuentes an unfitness determination. That is something that is reserved expressly to the discretion of the agency." Other than stating that "it seems in the first instance here Mr. Fuentes is asking the Court to make a determination that he should be found unfit," defendant does not specifically differentiate this case from other military disability cases which allege that the relevant military service acted in a manner that was arbitrary and capricious.

In response to defendant's arguments, plaintiff argues that Heisig actually stands for the proposition that the "Court has authority to evaluate a Service member's medical disability claims, including claims that involve questions of medical fitness or unfitness, to determine whether a board's decision was 'arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations.'" Plaintiff argues that "since Heisig, this Court has routinely considered claims challenging a military department's unreasonable decision to deny medical retirement under 10 U.S.C. § 1201." To support its arguments, plaintiff cites Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005), in which the Federal Circuit indicated that a court will review a "decision of the corrections board" under Section 1201 to decide if it is "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." Plaintiff also refutes defendant's use of Adkins, stating that in that case, "the Court found it was proper to evaluate a board's decision under the arbitrary and capricious standard of review." Adkins v. United States, 68 F.3d at 1322. Plaintiff also argues that defendant inappropriately cites Allphin v. United States, 758 F.3d at 1341, and Murphy v. United States, 993 F.3d at 872, because "those decisions involved unique reduction-in-force statutes not at issue here."

At oral argument, plaintiff's attorney stated that this case is justiciable because "[t]he Federal Circuit has held that this Court has jurisdiction under the Tucker Act to review military disability claims." Discussing Chambers v. United States, 417 F.3d at 1227, plaintiff's attorney stated at oral argument that Chambers

> finds exactly that, that Section 1201 [of Title 10] of the money-mandating statute for which the Court has jurisdiction under the Tucker Act and that the Court can and should review claims regarding military pay and claims, fitness claims under the arbitrary and capricious standard of review from the [Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (2018)]. Now, as recently as 2018, the Federal Circuit confirmed that in Brown v. United States, [735 F. App'x at 1034–35] there the Court remanded to the Army for determination of fitness in the first instance whether an Army Service member's medical conditions collectively rendered him medically unfit. So we submit, Your Honor, that those precedents from the Federal Circuit show clearly that this Court does have authority over military retirement pay claims and in particular, claims of fitness.

(alterations added). At oral argument plaintiff also discussed <u>Nyan v. United States</u>,[12] in which a Judge of the United States Court of Federal Claims stated that this court has jurisdiction over cases concerning military disability retirement.

After the remand, in the case currently before the court, Mr. Fuentes challenges the BCNR's May 3, 2021 decision on remand, which confirmed the PEB's assignment of only a 10 percent disability to plaintiff for his left knee injury alone. He is not asking to be reinstated or for the court to declare him fit for duty in the military. He challenges his disability rating upon discharge and argues that his TMJ disorder and back pain issues also rendered him unfit for additional percentages which should have been added to his 10 percent left knee disability rating, and that after the remand, the BCNR acted arbitrarily and capriciously.

At oral argument, plaintiff pointed out that the legal framework for defendant's decisions regarding military retirement claims begins

at the highest level [at] Section 1201 [of Title 10], which explains that if a Service member is medically unfit to continue performing their duties and if that Service member . . . has served for less than 20 years but is at least 30 percent disabled, then that Service member is entitled to a medical retirement.

(alteration added). Plaintiff asserted that

[t]o understand that statute [10 U.S.C. § 1201], you then have to look to Section 1216a [of Title 10], which tells you that in making the disability ratings determination, the military needs to use the VA disability regulations. And it says in determining that disability rating, one must look to, one must consider the collective effect of all disabilities, of all of a Service member's disabilities.

---

[12] In <u>Nyan</u>, a Judge of this court wrote:

It is well established that Section 1201 of Title 10 of the United States Code—which governs military disability retirement—is a money-mandating statute. <u>Fisher v. United States</u>, 402 F.3d 1167, 1174 (Fed. Cir. 2005) (citing <u>Sawyer v. United States</u>, 930 F.2d 1577 (Fed. Cir. 1991)). Accordingly, this Court has jurisdiction over Plaintiff's claims seeking monetary relief based on the Military Pay Act.

<u>Nyan v. United States</u>, 153 Fed. Cl. 234, 241, <u>recons. on other grounds</u>, 154 Fed. Cl. 463 (2021). The Judge in <u>Nyan</u> later granted defendant's motion for reconsideration and vacated the "order it issued in this case only insofar as the Court directed the Navy to award Mr. Nyan a disability retirement." <u>Nyan v. United States</u>, 154 Fed. Cl. 463, 467–68 (2021).

(alteration added). Plaintiff's attorney continued, "to refine that, there is DoDI 1332.18. 1332.18 is a regulation that is DoD's interpretation of those statutes [10 U.S.C. §§1201, 1216a]."[13] (alteration added). In addition, the SECNAV instructions, which are issued by the Secretary of the Navy, "interpret the statute and the DoDI."

> The statute at 10 U.S.C. § 1201 provides that a Service member may be retired
>
> [u]pon a determination by the Secretary concerned that a member described in subsection (c) is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay or while absent as described in subsection (c)(3), the Secretary may retire the member, with retired pay computed under section 1401 of this title, if the Secretary also makes the determinations with respect to the member and that disability specified in subsection (b).

10 U.S.C. 1201(a). The DoD must use the VA rating scale to evaluate disabilities for the purposes of medical retirement. See 10 U.S.C. § 1201(b)(3)(B); 10 U.S.C. § 1216a (2018); see also 38 C.F.R. Part 4. Section 1216a of Title 10 also provides parameters for determining a Service member's disability rating, including subsection (b), which is titled "Consideration of all medical conditions."

> **(b) Consideration of all medical conditions.**--In making a determination of the rating of disability of a member of the armed forces for purposes of this chapter, the Secretary concerned shall take into account all medical conditions, whether individually or collectively, that render the member unfit to perform the duties of the member's office, grade, rank, or rating.

10 U.S.C. § 1216a(b) (first emphasis in original; second emphasis added). Further, DoD regulations require the Navy to consider whether the member is

> unfit as a result of the combined effect of two or more conditions even though each of them, standing alone, would not cause the Service member to be referred into the DES [Disability Evaluation System] or be found unfit because of disability. The PEB will include in its official findings, in cases where two or more medical conditions (referred or claimed) are present in the service treatment record, that the combined effect was considered in the fitness determination as referred by the MEB. Combined effect includes the pairing of a singularly unfitting condition with a condition that standing alone would not be unfitting.

DoDI 1332.18 Encl. 3, Appx. 2, ¶ 4(d) (Change 1, effective May 17, 2018) (alteration added). In addition, SECNAVINST 1850.4F also states that the Navy:

---

[13] At oral argument, defendant suggested that "the DoDIs do have the force and effect of a regulation essentially and do bind the services and such to inform to the DoDI." According to defendant, the DoDIs are issued by the relevant Service secretary pursuant to 10 U.S.C. § 1216 (2018), but there is no notice and comment period.

> [W]ill consider all medical conditions, whether individually or collectively, that render the Service member unfit to reasonably perform the duties of the member's office, grade, rank, or rating. A Service member may be determined unfit as a result of the combined effect of two or more conditions even though each of them, standing alone, would not cause the Service member to be referred into the DES or be found unfit because of disability.

SECNAVINST 1850.4F at 2 (emphasis added).

In the case currently before the court, plaintiff challenges the BCNR's decision following the court's remand as "arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." Specifically, plaintiff asserts that the "BCNR failed to apply the correct legal standard," which required it to review all plaintiff's medical conditions and to examine whether Mr. Fuentes became medically unable to perform his military duties. Moreover, plaintiff argues that the BCNR did not comply with the governing law and regulations because it "failed to consider the evidence that Mr. Fuentes' spinal injury impaired his ability to perform the requirements of his job" and because the BCNR "failed to consider evidence that Mr. Fuentes' jaw injury impaired his ability to perform the requirements of his job." Because plaintiff specifically challenges whether the Navy complied with its own governing statute, regulations, and guidance, plaintiff presents a justiciable claim. See Baude v. United States, 955 F.3d at 1298 (citing Godwin v. United States, 338 F.3d at 1376–79)) ("Although claims that military decisions are substantively wrong are nonjusticiable, procedural violations underlying military decisions are generally justiciable.") (emphasis in original); Fisher v. United States, 402 F.3d at 1177 ("A court may decide whether the military has complied with procedures set forth in its own regulations because those procedures by their nature limit the military's discretion." (citation omitted)). Defendant's motion to dismiss for failure to state a claim on the grounds that the amended complaint raises non-justiciable issues is denied.

A Service member may be entitled to retirement benefits or medical severance pay if disabled while serving on active duty. See generally 10 U.S.C. § 1201–22. The relevant service Secretary is authorized to place eligible members in disability retirement status if the Service member is found to be medically "unfit" to perform military duties by reason of disability or disabilities incurred while the member was on active duty. See 10 U.S.C. § 1201. A Service member is medically "unfit" for further military service when, due to a disability, the Service member cannot "reasonably perform the duties of the member's office, grade, rank, or rating." SECNAVINST 1850.4F at 2; SECNAVINST 1850.4E at 3–14; see also 10 U.S.C. § 1201(a); 10 U.S.C. § 1203(a). If the member's disability is determined to be permanent and stable, the member shall be medically retired or separated, depending on the disability rating assigned under the Department of Veterans Affairs Schedule for Ratings Disabilities (VASRD). See 10 U.S.C. § 1201(b). Eligible Service members with a disability rated at 30 percent or greater, or who have a disability rated less than 30 percent, but with 20 or more years of active-duty service, will be retired. See 10 U.S.C. § 1201(b)(3). Eligible members with a rated disability of less than 30 percent and who have served fewer than 20 years on active duty are separated with medical severance pay. See 10 U.S.C. § 1203(b).

As noted above, a Service member may be deemed unfit due to two or more combined conditions, even if each condition, standing alone, would be insufficient to render the Service member unfit for duty. See DoDI 1332.18 Enc. 3, Appx. 2, ¶ 4(d) (Change 1, Effective May 17, 2018). When determining the rating disability of a Service member, therefore, the relevant Service secretary must "take into account all medical conditions, whether individually or collectively, that render the member unfit to perform the duties of the member's office, grade, rank, or rating." 10 U.S.C. § 1216a(b) (emphasis added). A condition must be considered as part of a Service member's disability rating if that condition "contributes" to a finding of unfitness. See, e.g., Kaster v. United States, 149 Fed. Cl. 670, 682 (2020) (ordering the Navy to consider whether the plaintiff's "other conditions about which he complained at the time were also unfitting or contributed to his unfitness"); Meidl v. United States, 108 Fed. Cl. 570, 576–77 (2013) (ordering the Army to determine whether multiple foot conditions "contributed" to unfitness under 10 U.S.C. § 1216a). In making these decisions, the "Secretaries of the Military Departments will consider all relevant evidence in assessing Service member fitness, including the circumstances of referral." DoDI 1332.18 Enc. 3, Appx. 2, ¶ 3(a) (Change 1, Effective May 17, 2018) (emphasis added); SECNAVINST 1850.4E Enc. 3, § 3303.

Plaintiff asserts that according to the VA's 2017 IDES Proposed Ratings, "plaintiff suffers from injuries to his left knee, lower back, and jaw, and that these injuries are 10%, 20%, and 30% disabling under applicable regulations." Defendant does not dispute the VA's 2017 IDES Proposed ratings for plaintiff's injuries. There is also no dispute that plaintiff's knee injury has impacted plaintiff's ability to run, crawl, dig trenches, and carry weight—all of which are required duties of a Marine rifleman. Plaintiff's medical records establish that plaintiff is unfit for duty. Plaintiff's Commanding Officer concluded "that he 'cannot do the basic requirements of a rifleman' such as 'rigorous field training.'" Moreover, the PEB confirmed in its reconsideration letter, dated August 23, 2018, that plaintiff's left knee injury was incurred while he was entitled to basic pay, was permanent, and had not occurred during a period of unauthorized absence or because of misconduct or negligence. The question remains as to whether the BCNR's conclusion that plaintiff's back issues and TMJ did not contribute to his unfitness for duty, but if so, at what percentage, was arbitrary and capricious.

RCFC 52.1(c)(1) governs motions for judgment on the administrative record. The court's inquiry is directed to "'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" Mgmt. & Training Corp. v. United States, 115 Fed. Cl. 26, 40 (2014) (quoting A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006); see also Superior Optical Labs, Inc. v. United States, 150 Fed. Cl. 681, 691 (2020) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356-57 (Fed. Cir. 2005)); AAR Manufacturing, Inc. v. United States, 149 Fed. Cl. 514, 522 (2020); Glocoms, Inc. v. United States, 149 Fed. Cl. 725, 731 (2020); Centerra Grp., LLC v. United States, 138 Fed. Cl. 407, 412 (2018) (citing Bannum, Inc. v. United States, 404 F.3d at 1356–57); Informatics Applications Grp., Inc. v. United States, 132 Fed. Cl. 519, 524 (2017) (citation omitted); Strategic Bus. Sols., Inc. v. United States, 129 Fed. Cl. 621, 627 (2016), aff'd, 711 F. App'x 651 (Fed. Cir. 2018). The process "is akin to an expedited trial on the paper record," and the "court must make factual findings where necessary." Jordan Pond Col, LLC v. United States, 115 Fed. Cl. 623, 630 (2014).

This court reviews the BCNR decision "to determine whether it is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." Lewis v. United States, 458 F.3d 1372, 1376 (Fed. Cir.) (citing Martinez v. United States, 333 F.3d 1295, 1305, 1314 (Fed. Cir. 2003), cert. denied, 540 U.S. 1177 (2004)), reh'g en banc denied (Fed. Cir. 2006), cert. denied, 552 U.S. 810 (2007); see also Chappell v. Wallace, 462 U.S. 296, 303 (1983) ("Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence."); Baude v. United States, 955 F.3d at 1298; Metz v. United States, 466 F.3d 991, 998 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006); Porter v. United States, 163 F.3d 1304, 1312 (Fed. Cir. 1998), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 528 U.S. 809 (1999); Heisig v. United States, 719 F.2d at 1156; Skinner v. United States, 219 Ct. Cl. 322, 332, 594 F.2d 824, 830 (1979); Ward v. United States, 133 Fed. Cl. 418, 427 (2017); Joslyn v. United States, 110 Fed. Cl. 372, 389 (2013); Meidl v. United States, 108 Fed. Cl. at 575. A plaintiff must show that the decision by the relevant corrections Board was arbitrary and capricious, contrary to law, or unsupported by substantial evidence, and that, in accordance with this deferential standard of review, the court does not reweigh the evidence, "but rather considers 'whether *the conclusion being reviewed* is supported by substantial evidence.' So long as the Board considered the relevant evidence and came to a reasonable conclusion, this court will not disturb the Board's decision." Riser v. United States, 97 Fed. Cl. 679, 683–84 (2011) (quoting Heisig v. United States, 719 F.2d at 1157) (emphasis in original; citations omitted).

This standard of review is narrow. The court does not sit as "a super correction board." Skinner v. United States, 219 Ct. Cl. at 331, 594 F.2d at 830. Moreover, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." Dodson v. United States, 988 F.2d at 1204.

The United States Supreme Court, however, has indicated:

Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies; we may not supply a reasoned basis for the agency's action that the agency itself has not given. SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) [reh'g denied and reh'g denied sub nom. SEC v. Fed. Water & Gas Corp., 332 U.S. 747 (1947)]. We will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Ark.–Best Freight Sys., Inc., 419 U.S. 286, 95 S. Ct. 438, 42 L. Ed. 2d 447. See also Camp v. Pitts, 411 U.S. 138, 142–43, 93 S. Ct. 1241, 36 L. Ed. 2d 106 (1973) (per curiam).

<u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983) (other citations omitted); <u>see</u> <u>also</u> <u>Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.</u>, 419 U.S. at 285–86 ("The agency must articulate a 'rational connection between the facts found and the choice made.' While we may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (citations omitted). In <u>Verbeck v. United States</u>, a Judge of this court stated:

> The court's review in these matters is thus limited in scope and deferential in nature. Ms. Verbeck must show that the Board's decision was arbitrary and capricious, contrary to law, or unsupported by substantial evidence. <u>See</u> <u>Chambers v. United States</u>, 417 F.3d at 1227 [<u>cert.</u> <u>denied</u>, 546 U.S. 1066 (2005)]; <u>Godwin v. United States</u>, 338 F.3d 1374, 1378 (Fed. Cir. 2003); <u>Heisig [v. United States]</u>, 719 F.2d [at 1156] . . . . The Board's decision will comply with the substantial evidence standard so long as a "'reasonable mind might accept' [the] particular evidentiary record as 'adequate to support [the contested] conclusion.'" <u>Dickinson v. Zurko</u>, 527 U.S. 150, 162, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (quoting <u>Consolidated Edison Co. of N.Y. v. NLRB</u>, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). Similarly, the arbitrary and capricious standard "requires a reviewing court to sustain an action evincing rational reasoning and consideration of relevant factors." <u>Advanced Data Concepts, Inc. v. United States</u>, 216 F.3d 1054, 1058 (Fed. Cir. 2000) [<u>reh'g</u> <u>denied</u> (Fed. Cir. 2000)].

> In sum, the court must satisfy itself that the Board considered all of the relevant evidence and provided a reasoned opinion that reflects a contemplation of the facts and circumstances pertinent to the case before it. <u>See</u> <u>Heisig v. United States</u>, 719 F.2d at 1157 ("Under the substantial evidence rule, *all* of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion."); <u>Van Cleave v. United States</u>, 70 Fed. Cl. 674, 678–79 (2006) (While the court does not "serve as a 'super correction board[,]' <u>Skinner v. United States</u>, . . . correction boards must examine relevant data and articulate satisfactory explanations for their decisions.") (citations omitted). If the Board "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the [Board], or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise[,]" its decision runs afoul of even this lenient standard of review. <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983).

<u>Verbeck v. United States</u>, 97 Fed. Cl. 443, 451 (2011) (third and fourth omission in original). Moreover, "[t]he court's review extends to determinations related to both alleged legal error and alleged injustice, so long as the requested correction would result in a money judgment." <u>Bonewell v. United States</u>, 111 Fed. Cl. 129, 143 (2013) (citing <u>Grieg</u>

v. United States, 640 F.2d 1261, 1266, 226 Ct. Cl. 260, 266 (1981) ("[T]he court cannot itself correct a simple injustice or direct a correction board to do so, without the correction implementing a money judgment.").

In plaintiff's amended complaint, he challenged the "Navy's misapplication of the Properly Referred Policy and denial of his Petition for Relief as arbitrary and capricious, unsupported by substantial evidence, and contrary to law." Specifically, plaintiff argued that the Properly Referred Policy, which allowed the informal PEB and the formal PEB to examine only those conditions that were referred by the MEB, violated "both the explicit statutory requirements of 10 U.S.C. § 1216a, and provisions of Department of Defense Instruction ('DoDI') 1332.18 that take priority over any conflicting Navy Policy." See 10 U.S.C. § 1216a (requiring the relevant Service Secretary to evaluate all potential medical conditions that render the Service member unfit for duty). Moreover, plaintiff alleged that the MEB violated its legal obligations because it did not evaluate or address all of plaintiff's medical conditions. DoD regulations require the MEB to document all medical conditions that, individually or collectively, render a Service member unfit for duty. See DoDI 1332.18 Encl. 3, ¶¶ 2(a), (f)(2) (Aug. 5, 2014). In addition, DoDI 1332.18 states that:

> MEBs will confirm the medical diagnosis for and document the full clinical information, including history, treatment status, and potential for recovery of the Service member's medical conditions that, individually or collectively or through combined effect, will prevent the Service member from performing the duties of his office, grade, rank, or rating and state whether each condition is cause for referral to a PEB.

DoDI 1332.18 Encl. 3, ¶ 2(f)(2). SECNAVINST 1850.4E states that "current clinical condition(s) should be noted." SECNAVINST 1850.4E Encl. 8, Att. (a), ¶ 2(j). As noted above, Dr. Reddy referred plaintiff to the MEB for his left knee injury only, leaving out plaintiff's other potentially unfitting disabilities. Plaintiff alleges that when the MEB issued its report, however, "the record contained evidence of multiple potentially unfitting conditions," including plaintiff's TMJ and back injury, which, according to plaintiff, the MEB did not adequately consider. Plaintiff argues that if the formal PEB had also properly considered plaintiff's TMJ and his back injury on January 24, 2018, in addition to his left knee injury, he would have met the 30 percent disability rating threshold required for medical retirement. Plaintiff alleged, therefore, that both the MEB and the formal PEB did not comply with their obligations under the governing statutes and DoD regulations when they denied plaintiff's claim for entitlement to military disability retirement.

As reflected in the administrative record before this court, plaintiff tried to have the informal PEB as well as the formal PEB evaluate medical conditions in addition to his left knee injury. On January 24, 2018, plaintiff petitioned the informal PEB for a formal PEB to consider his other medical conditions and appeared before the formal PEB on March 14, 2018 to object to the Properly Referred Policy, which was still in effect at the time. As noted above, Colonel Kuchinado, the presiding officer at the formal PEB, stated "that the second condition, TMJ, by record here and the evidence available to the Board is not a properly referred condition and, therefore, the Board will be unable to make a determination on that condition." Consistent with Colonel Kuchinado's statement, the formal PEB addressed only plaintiff's left knee injury in its April 3, 2018 decision.

Separately, on March 8, 2018, plaintiff requested that the informal PEB terminate the proceedings then before the informal PEB to give plaintiff an opportunity to raise all his potentially unfitting conditions, including low back issues and TMJ. The informal PEB denied this request on March 13, 2018. The only justification in the record for this denial was a handwritten note which states, "[a] review of current medical evidence does not warrant case termination." Although the Properly Referred Policy was still in force, plaintiff's medical record should have caused the MEB, the informal PEB, and the formal PEB to have reviewed all of plaintiff's medical issues including his lower back and jaw issues under the applicable statute and DoD regulations and guidance.

The United States Supreme Court held that, "[t]he agency must articulate a 'rational connection between the facts found and the choice made.'" Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. at 285–86 (citations omitted). While the standard of review for PEB decisions by courts is narrow, the question is whether the PEB considered all the relevant medical evidence and conditions evident in plaintiff's record and provided a reasoned opinion that reflects a review of the totality of the facts and circumstances of the case. See Heisig v. United States, 719 F.2d at 1157 ("Under the substantial evidence rule, all of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion.") (emphasis in original). A handwritten note by the informal PEB, indicating only that "[a] review of current medical evidence does not warrant termination," is not sufficient to meet this standard for review. Moreover, the Navy's handling of plaintiff's case has not been thorough from the outset. The referring physician to the MEB, Dr. Reddy, did not include plaintiff's TMJ disorder or his back injury in his report to the MEB, which did not consider these two additional issues, and which, under the Properly Referred Policy, did not refer these two additional issues to the informal PEB for evaluation. Moreover, defendant's counsel conceded that "[t]he CORB does not provide a detailed analysis to support its determination that there was no evidence that either TMJ or low back strain would have impaired Mr. Fuentes's ability to perform his military duties. And, it is unclear precisely whether the CORB considered any new evidence submitted by Mr. Fuentes when making its decision."[14]

_____

[14] The CORB Director's denial letter to plaintiff stated that "I found no evidence that either TMJ or LOW BACK has, or will impair your ability to engage in appropriate military duties. Therefore, your petition is denied." (capitalization in original). This determination appears at odds with plaintiff's claimed duties as a marine rifleman, which "included carrying heavy equipment for hours, running, and digging trenches for wire" and "communicating with subordinates during missions." The CORB Director's denial letter stated that

> your case has been reviewed to determine whether the additional petitioned conditions are separately or collectively unfitting. I found they are not. Neither your TMJ or LOW BACK PAIN conditions were referred by a Medical Board Report nor were they separately mentioned in the Commanding Officer's Non-Medical Assessment as limiting your ability to perform your military duties.

As discussed above, given the dearth of information regarding the Navy's reasoning for its failure to consider plaintiff's complete medical record, in 2020 defendant proposed a voluntary remand to the BCNR. The court granted defendant's motion for voluntary remand, and ordered the BCNR to

> [a]ddress all issues within its authority, including any pertinent issues raised by the parties, including specifically whether plaintiff, Brandon Fuentes, is entitled to correction of his naval records concerning his claim that the Navy failed to properly consider whether his diagnosed low back strain and temporomandibular joint syndrome (TMJ) separately or collectively impaired his ability to perform his military duties. In addition, the BCNR shall consider any additional documents or evidence that Mr. Fuentes wishes the BCNR to consider during the remand proceedings, including an application for the correction of his military record with the BCNR.

Pursuant to the court's September 15, 2020 remand Order, the BCNR reviewed plaintiff's claims and "found the evidence submitted insufficient to establish the existence of probable material error or injustice." On May 3, 2021, the BCNR issued a brief, five page decision on plaintiff's claims. Two pages of the BCNR decision were devoted to explaining the prior history and this court's remand instructions. The BCNR determined that plaintiff was ineligible for medical retirement under 10 U.S.C § 1201 because the condition that rendered him "unfit" (his left knee injury) was not at least 30 percent disabling, which is required for medical retirement and disability benefits under the statute. Consequently, the BCNR denied plaintiff's request following remand for correction of his naval records and the associated backpay. In denying plaintiff's request, the BCNR indicated:

> Documentary material considered by the Board consisted of your application, together with all material submitted in support thereof, to include your complaint to the CoFC; relevant portions of your naval record; and applicable statutes, regulations and policies. In addition, the Board considered the advisory opinions contained in Psychiatric Advisor CORB letter 1910 CORB: 002 of 2 December 2020 and Director CORB letter 1910 CORB: 001 of 7 December 2020, along with your response to these opinions.

(capitalization in original). The BCNR decision, however, did not address most of plaintiff's medical history and record or offer much insight into its decision and reasoning. The BCNR cited two pieces of evidence multiple times: (1) Dr. Harris' medical evaluation of plaintiff's left knee injury only, dated February 8, 2019, one week after plaintiff's February

---

(capitalization in original). The CORB Director's denial letter further stated that it appeared that plaintiff's reason "for requesting these conditions to be found unfitting is due to the VA's determination to assign a disability rating for each." The CORB Director's denial letter continued that, "unlike the VA that assigns ratings based on service connection and manifestation of symptoms alone, Department of Defense and Navy regulations require objective evidence that shows military occupational impairment resulting from a specific condition."

1, 2019 discharge, which was conducted to determine plaintiff's post-military employability; and (2) the CORB Advisory Opinion which purported to review plaintiff's medical records and additional submitted evidence, and which found that plaintiff was not entitled to a "finding that you were unfit for a back condition or TMJ." The BCNR concluded:

> In your case, the Board found that your back condition was insufficiently impairing to require a referral from the medical board to the PEB. In making this finding, the Board again relied on the 8 February 2019 medical examination that documented no symptoms with your back. The Board concluded the lack of back pain symptoms one week after your discharge was sufficient evidence of fitness to meet the preponderance of evidence standard when considered in totality with several Navy medical provider decisions not to refer your case to a medical board or the PEB. In the Board's opinion, in order to qualify for a referral under the "combined effect" policy, there must be some evidence of an occupational impairment. Since none related to your back were documented one week after your discharge, the Board felt your back condition did not qualify for referral under the policy.[15]

As noted above, the BCNR found the February 8, 2019 medical examination persuasive that plaintiff's back injury was not unfitting because "[i]n the Board's opinion, the lack of documented symptoms on 8 February 2019 was consistent with the decisions of Navy medical providers not to refer your back condition to the PEB." The BCNR determined that because there was no mention of plaintiff's back injury in the February 8, 2019 medical exam report, that such injury was insufficient to impair plaintiff's ability to serve as a rifleman. In addition, the BCNR stated that it "also considered the 8 February 2019 medical examination that did not document any symptoms for your TMJ condition. This was further evidence that the Navy did not err by not finding your TMJ condition unfitting." As discussed below, the BCNR appears to have concluded that because the February 8, 2019 medical examination did not mention plaintiff's TMJ condition and its symptoms, that plaintiff's jaw issues did not impair his ability to perform his military duties, including eating military rations and communicating with other marines in the field.

Plaintiff asserts that the BCNR erred when it "concluded that the record 'documents no symptoms with [his] back' at the 'time' of his discharge on February 1, 2019." (alteration in original). The February 8, 2019 medical examination conducted by Dr. Harris was a "physical exam for employment" that the BCNR stated was "conducted specifically to determine whether you could be employed post-discharge," not whether he could perform his duties as a marine rifleman. Plaintiff points out that the physician who conducted the February 8, 2019 examination, Dr. Keith Harris, was expressly "[o]nly

---

[15] The BCNR also stated that it would "reconsider its decision upon submission of new matters," and that "[n]ew matters are those not previously presented to or considered by the Board." Upon remand, however, the court ordered the BCNR to "address all issues within its authority, including any pertinent issues raised by the parties" regardless of whether these records have been previously reviewed by the BCNR.

noting issues related to recent MEB for L [left] knee pn [pain]," but gave no reasons for these conclusions. (alterations added). Dr. Harris indicated that "[a]ll other issues that have either been previously evaluated or simply do not need further evaluations at this time." Plaintiff argues, therefore, that "[t]he BCNR cannot point to the absence of back pain in that report as evidence that Mr. Fuentes was not experiencing back pain, when the author of the report explains that he intentionally did not consider Mr. Fuentes' 'other' medical issues."

Plaintiff asserts that by relying so heavily on this February 2019 medical exam, "[i]n practical effect, the Board was re-applying the revoked Properly Referred Policy, because it was relying upon the absence of any discussion of back pain in a [February 8, 2019] medical report that was intentionally and explicitly limited to the only issue (Mr. Fuentes' left knee) listed in the MEB referral," (alteration added), and which informed the informal and formal PEBs' reviews and the PEB's reconsideration decision. As discussed above, the Properly Referred Policy was rescinded shortly after plaintiff's claims were referred to the PEB. At oral argument in this court, plaintiff argued that the BCNR's reliance on the February 8, 2019 medical examination report was problematic because Dr. Harris expressly reviewed only plaintiff's left knee injury, and because plaintiff's medical records from both before and after "that February 8th [2019] report include reports of back pain, including a February 27th [2019] report in which [plaintiff] reported low, dull, pulling pain." (alterations added). Plaintiff continued that

it is not rational for the Board to focus on this single record [February 8, 2019 medical report] and say the absence of a symptom from it, even though the record says it's not discussing those other symptoms, is somehow evidence that Mr. Fuentes' spinal injury is not occupationally impairing, particularly when records immediately following it just days later show back pain.

(alteration added).

The BCNR's reliance on Dr. Harris' report, particularly in light of the fact that he explicitly limited the exam to plaintiff's left knee injury, was arbitrary and capricious. The BCNR did not articulate a rational reason for relying so heavily on this medical report when other medical records in plaintiff's file indicate that plaintiff suffered from low back strain and from TMJ that appeared to inhibit his ability to carry out his duties as a marine rifleman and this court's remand order specifically instructed the BCNR to consider if the Navy had properly considered the lower back and TMJ claims of plaintiff. This court is concerned that the February 8, 2019 report was not the most recent or thorough medical evaluation of plaintiff, as Dr. Slawski provided expert opinions on November 25, 2020 and April 7, 2021, and submitted supporting MRI results, after the September 15, 2020 remand, which ordered the BCNR to include in its analysis any additional medical documentation submitted by plaintiff. The BCNR Decision did not mention these expert opinions and certainly did not refute Dr. Slawski's opinion as to why plaintiff's back injury and TMJ condition impaired plaintiff's ability to perform his military duties.

In its denial, the BCNR also relied heavily on the CORB Advisory Opinion that was endorsed by the Director of the CORB. The CORB Advisory Opinion recommended that the BCNR deny relief to plaintiff because his "lower back pain only warranted two

physician evaluations during your active duty service and involved only conservative treatments." In response, plaintiff submitted a second expert opinion from Dr. Slawski, dated April 7, 2021, that indicated plaintiff had been suffering from low back strain for many years. Dr. Slawski's opinion was supported by an MRI test result that confirmed that plaintiff continues to suffer from conditions related to his spine.

Defendant argues that "the [CORB] advisory opinion, which chronicled the numerous and various medical encounters that Mr. Fuentes had during his active-duty service, noted that Mr. Fuentes had 88 medical and physical therapy encounters for his left knee pain from 2016 through 2018," but "[i]n contrast, Mr. Fuentes had only nine encounters that appear to have had any relationship to his low back pain, but none of these encounters which began in 2017, ever prompted any of the personnel who encountered Mr. Fuentes to refer him to a medical board or the PEB, as his symptoms were never deemed to warrant such a result." Moreover, defendant states that the "encounters" that plaintiff did have with medical practitioners regarding his back "resulted in conservative treatment, such as applying warm heat and engaging in stretching and the use of Tylenol." Defendant asserts that "[t]here exist no records of physical limitations or duty restrictions due to Mr. Fuentes's low back strain."

Plaintiff responded by arguing that the CORB Advisory Opinion misapplied the "'preponderance of the evidence' and 'combined effect' standard specified in the Navy and Department of Defense regulations, respectively." Plaintiff states that "[t]he Advisory Opinion tallies Mr. Fuentes' reports of knee pain and his reports of back pain and compares the results," and concluded that because there was a "greater *mass* of evidence" to support unfitness for plaintiff's knee injury, that there was insufficient evidence to find that plaintiff's back also impaired his ability to serve. (emphasis in original). Instead, plaintiff argues, the preponderance of the evidence standard requires the CORB to compare all the evidence that plaintiff's "back pain significantly interfered with his ability to perform his military duties to any evidence that it did not significantly interfere with that ability," as well as other evidence in the record of disabilities and resulting medical issues. According to plaintiff, the "Advisory Opinion's assessment errs in merely identifying the 'greater *mass* of evidence' on one side of what is ultimately the wrong question." (emphasis in original). Second, plaintiff argues that the CORB erred when it looked solely at the quantity of evidence without also considering the quality of all the evidence in the record. In support of its argument, plaintiff cites SECNAVINST 1850.4E Encl. 2, § 2070, which states that "'[p]reponderance does not necessarily mean a greater number of witnesses or a greater mass of evidence' but 'refers to the *quality, rather than the quantity* of the evidence.'" (emphasis in original).

Pursuant to the "BCNR Request to Mr. Fuentes for Comments" dated December 7, 2020, plaintiff provided the MRI results of plaintiff's lower back and submitted the April 7, 2021 medical analyses by Dr. Slawski and Dr. James Fernandez, the treating radiologist, to the BCNR. Both Dr. Slawski and Dr. Fernandez indicated that the "imaging showed significant desiccation (loss of fluid), a common indicator of degenerative disc disease; mild to severe arthropathy, or the wearing down of discs between the vertebrae; and a left foraminal disc extrusion (a herniated disc in which the disc fluid squeezes through a tear in the disc's fibrous outer later)." On April 7, 2021, Dr. Slawski submitted an addendum to his November 25, 2020 expert opinion to the BCNR, in which Dr. Slawski

stated that plaintiff's results were "most consistent with compressive/torsional injuries in the lower back which occurred during the time frame that Mr. Fuentes was on active duty." Dr. Slawski further explained that plaintiff's "injury would be expected to produce chronic back pain, left sacroiliac joint pain, a left L5 radiculopathy, and limitations in range of motion in the lower back, all of which Mr. Fuentes experienced since the onset of his symptoms in 2014, and which are documented in his in-service treatment records as 'difficulty with turning, bending, lifting, and any significant physical activity.'" Plaintiff argues that "[t]hese findings are consistent with a doctor's [Dr. Sussman's] conclusion in August 2017 that Mr. Fuentes had experienced a back injury that impeded his ability to move. To restate, the doctor [Dr. Sussman] found in August 2017 that he [plaintiff] suffered from lumbosacral strain—i.e., lower back injury—that prevented 'forward flexion of the thoracolumbular spine . . . greater than 60 degrees.'" (alteration added). Plaintiff asserts that these MRI results provide "objective evidence of a chronic back condition that prevented [plaintiff] from performing his Marine Corps duties," which is further supported by plaintiff's "repeated efforts to seek treatment for low back pain from his in-service medical treatment providers." (alteration added).

Plaintiff also asserted in his amended complaint that the Navy misapplied the "combined effect" policy, which requires the Navy to consider multiple medical conditions, "even though each of them, standing alone, would not cause the Service member to be referred into the DES [Disability Evaluation System] or be found unfit because of disability." DoDI 1332.18 Encl. 3, App'x 2, ¶ 4(d) (alteration added). Defendant, citing SECNAVINST 1850.4E Encl. 3, § 3301, asserts that, "the evaluation and determination of member disability at the time of Mr. Fuentes' separation was governed by the Department of the Navy Disability Evaluation Manual," which provides that the "sole standard to be used in making determinations of physical disability as a basis for retirement or separation is unfitness to perform the duties of office, grade, rank or rating because of disease or injury incurred or aggravated while entitled to basic pay." (alteration in original). SECNAVINST 1850.4E provides that "[e]ach case is considered by relating the nature and degree of physical disability of the member to the requirements and duties that member may reasonably be expected to perform in his or her office, grade, rank, or rating." Id. In addition, "[c]onditions that do not themselves render a Service member unfit for military service will not be considered for determining the compensable disability rating unless those conditions contribute to the finding of unfitness." SECNAVINST 1850.4E Encl. 3, § 3802(g).

As noted above, the CORB Advisory Opinion first determined that plaintiff's TMJ disorder and low back strain did not impair his ability to perform his assigned duties, and, therefore, should not be considered with plaintiff's left knee injury for the purposes of determining his disability rating. Plaintiff argues that "in May 2018, when Navy Instruction 1850.4E [SECNAVINST 1850.4E] was in effect, and before Mr. Fuentes's separation from the Navy, the Department of Defense issued Change 1 to Department of Defense Instruction 1332.18. Under Change 1, the Navy must address 'combined effect' in its disability evaluations," (alteration added) and that "[p]ursuant to this revision to the DoD Instruction, the 'actually interferes significantly' standard cannot require that each medical condition, standing alone, is sufficient to render the Service member unfit for duty when that member already has an independently unfitting condition." Plaintiff asserts, therefore,

that the May 2018 revisions to DoDI 1332.18 "precluded the PEB during Mr. Fuentes's IDES proceedings in September 2018—and the BCNR now—from lawfully using the narrower definition of 'unfitting' in SECNAVINST 1850.4E that is applied in the Advisory Opinion."[16] In other words, plaintiff argues that the CORB Advisory Opinion applied an impermissibly narrow definition of "unfit" to plaintiff's case, and, therefore, the BCNR's heavy reliance on remand on the CORB Advisory Opinion was unreasonable. At oral argument, plaintiff elaborated that the BCNR's decision recited "the combined effect standard," which "requires the Board to consider [plaintiff's] injuries collectively," but plaintiff asserts that the BCNR did not actually analyze the "combined effect" standard and did not apply it to plaintiff's case. Plaintiff continues that with respect to Mr. Fuentes, "[t]here's not a sentence or a paragraph that considers his spinal injury and knee injury at the same time, his knee injury and jaw injury at the same time, let alone all three." Plaintiff asserts that once it was established that he was unfit for duty due to his knee injury, then all of his referred or claimed medical conditions should have been evaluated to determine his disability rating upon discharge. According to plaintiff, due to the severity of plaintiff's back injury and his TMJ, had the CORB and the BCNR found that plaintiff was unfit for either condition—in addition to his left knee injury—plaintiff would have met the 30 percent threshold required for medical retirement. At oral argument, plaintiff asserted that "the Board failed to apply the correct legal standard. It did not apply the 'combined effect' standard of the DoDI or [10 U.S.C.] 1216a, and thus, this position is contrary to law." (alteration added).

Defendant responded to plaintiff's argument by asserting:

Mr. Fuentes has failed to refute that the active duty medical evidence in this record does not demonstrate that either of these two conditions led to occupational impairments or "effects," that were not considered by the BCNR under its [sic] "combined effect" analysis. In fact, Mr. Fuentes cites no record evidence that documents occupational impairments in his active duty record.

At oral argument in this court, defendant stated that "the Navy looked through all of his files and in those files only ever found any evidence of his knee leading to any sort of impairment. So without impairment, which was the effect and the combined effect, there was nothing to add to the knee issue." Defendant asserts that, regarding plaintiff's "back issue, while it has been documented in Dr. Sussman's report, difficulty bending, there was nothing in there that precluded him from doing any work." (emphasis added). Defendant continued that the BCNR considered the November 25, 2020 and April 7, 2021 expert opinions that plaintiff submitted from Dr. Slawski, stating that

---

[16] The CORB Advisory Opinion applied the "actually interferes" policy to deny that plaintiff's back injury and TMJ condition impaired his ability to perform his assigned duties. The CORB Advisory Opinion, quoting SECNAVINST 1850.4E, states that to demonstrate "that a member is Unfit for continued naval service, it must be established that the medical disease or condition underlying the diagnosis *actually interferes significantly with the member's ability to carry out the duties of his or her office, grade, rank or rating*." (emphasis in original).

Dr. Slawski's opinions were presented and considered. But again, Dr. Slawski's opinion didn't present any active service record showing that his low back strain that Mr. Fuentes had actually led him to any sort of impairment or effect that would have to be weighed in with the actual observable effects that they saw about his knee, that he was unable to run and lift and carry.

The court does not consider the BCNR's evaluation of Dr. Slawski's November 25, 2020 and April 7, 2021 expert opinions with supporting MRI results, which Dr. Slawski interpreted to show objective evidence of a back injury stemming from 2014, to have been complete. Dr. Slawski indicated that, due to plaintiff's left knee injury, "forces will be shunted to the lumbar spine with further additive overload." Dr. Slawski continued that "[b]ecause of the mechanical link effect of the lower extremity and axial skeletons, the sum of the knee and back functional loss will actually be greater than the individual disorders taken separately." Dr. Slawski concluded that given all of the evidence in plaintiff's medical records, including the 2017 medical evaluation by Dr. Sussman, "to not consider the persistent lower back sprain in his inability to perform the required tasks of a Rifleman appears to be an arbitrary exclusion." Also, the BCNR did not articulate a reason for why the February 8, 2019 medical report, which was expressly limited to the left knee pain, and was more persuasive to the BCNR than the multiple occasions on which plaintiff reported and sought care for his back pain during his active duty service, as well as the November 25, 2020 and April 7, 2021 expert opinions from Dr. Slawski. Finally, the court is not persuaded by defendant's counsel's suggestion without more medical analysis that Dr. Sussman's August 2017 report, which defendant concedes indicates "difficulty bending," does not demonstrate that plaintiff's back impaired his ability to carry out his duties, which included "carrying heavy weight, running, digging trenches for wire, CFT/PFT [Combat Fitness Tests/Physical Fitness Tests]." (alteration added). In order to pick up heavy weight or to dig trenches for wire, one might question whether one must first be able to bend—at minimum—to a normal range of motion and without repetitive pain. Similarly, the court is not convinced that the BCNR fully considered whether plaintiff's TMJ disorder affected his ability to perform his duties as a marine rifleman, which, plaintiff claims, includes communicating with fellow marines during training in the field or while on deployment and an ability to eat military rations in the field. The BCNR did not indicate that it has evaluated all plaintiff's medical records including those related to plaintiff's TMJ disorder when it relied on two dental exams and the February 2019 medical exam, which, as stated multiple times above only reviewed plaintiff's left knee injury, when the BCNR concluded that plaintiff's TMJ disorder did not impair his ability to perform his assigned duties. To train in the field and to deploy, as is required for a marine rifleman, one must be able to eat the available provisions, which plaintiff claims was not always feasible due to his ongoing and painful episodes of lock jaw. Moreover, plaintiff had to be able to communicate with fellow marines without fear that his jaw would suddenly lock, rendering him unable to open his mouth. The court is, therefore, not persuaded that the BCNR provided a fulsome and thorough review of all plaintiff's claims and medical records when it summarily denied plaintiff's back and jaw issues as not impeding his ability to carry out his military duties.

The court also notes that the CORB Advisory Opinion relied on plaintiff's Commanding Officer's NMA, which was his "narrative assessment on how the service member's medical condition impacts on his/her ability to perform military duties," written by the Service member's immediate commanding officer. SECNAVINST 1850.4E Encl. 3, § 3205(b)(1)(e). According to the CORB website:

> The evaluation of the Unit Commander holds **significant** weight with the board. The non-medical assessment (NMA) submitted by the command is the primary document the board leverages to determine the Service member's ability to perform their duty. **It is imperative that unit commanders take the time to understand and reconcile conditions referred to the PEB for evaluation and provide their own assessment as to why each referred condition prevents the Service member from performing their duty**.[17]

(emphasis in original). Plaintiff's Commanding Officer submitted an NMA which, although issued by a non-medical officer, stated, "[d]ue to his medical condition, the service member cannot do the basic requirements of a rifleman." With regard to the NMA, the CORB Advisory Opinion states:

> The language here is non-specific ("medical condition") but it is the norm for commanding officers to reference those conditions referred to the PEB in NMAs. There is no indication the commanding officer referenced anything other than Left Knee Pain in the NMA. This is further supported by [Certified Physician Assistant] Hazard's medical assessment on 1 Jun 2017 specific to Left Knee Pain, where it was noted "the rest of the unit deploys next week."

(capitalization in original; alteration added). The court finds that the CORB Advisory Opinion's assertion regarding the scope of the NMA does not reflect an analysis of all of plaintiff's medical history and documentation in the record. There is nothing in the record to support the CORB Advisory Opinion's argument that because it was "the norm for commanding officers" to review only medical conditions that had been referred to the PEB, that plaintiff's Commanding Officer should have limited the scope of his NMA to plaintiff's left knee injury only. While the NMA may bear great weight with the PEB, the Commanding Officer did not offer any detail as to the nature of the medical condition(s), which "medical condition" or which multiple conditions, precluded plaintiff from performing his duties. He wrote only that plaintiff was unfit "due to his medical condition" without highlighting specifics in plaintiff's medical record or that he understood plaintiff's multiple existing conditions. Moreover, the applicable statutory and regulatory scheme does not contemplate that this NMA should be the primary basis for final disability ratings and determine whether a Service member is discharged or retired as medically unfit for duty after review of all of an individual's medical conditions.

---

[17]  Information for Unit Commanders, COUNCIL OF REVIEW BOARDS (CORB), https://www.secnav.navy.mil/mra/CORB/Pages/Information-for-Unit-Commanders.aspx (last visited Dec. 20, 2021).

The BCNR also considered the IDES ratings issued by the VA on November 25, 2017, of 30 percent and 20 percent disability for plaintiff's TMJ and back conditions, respectively. The BCNR noted, however, that "the existence of a disability condition alone is insufficient to merit referral to the Disability Evaluation System and, as your [sic] [plaintiff] correctly pointed out in your response to the advisory opinion, the Board had to weigh evidence of whether your back pain and TMJ conditions significantly interfered with your ability to perform your military duties against evidence that it did not." The BCNR, once again very summarily stated that

> [a]fter considering the totality of the evidence, the Board felt the quality and quantity of the evidence weighed in favor of a finding that the Navy properly considered whether your diagnosed low back strain and TMJ separately or collectively impaired your ability to perform your military duties when it chose not to refer either condition to a medical board or the PEB.

After remand, the BCNR also denied plaintiff's claims that his TMJ impacted his ability to serve as a marine rifleman because:

> The Board found the dental examination results from 23 January 2018 and 8 November 2018 compelling as evidence that your TMJ condition did not create an occupational impairment. After both examinations you were classified as a "Class 1," meaning that your dental status did not create any duty limitations including your ability to be assigned world-wide.

The BCNR once again looked to the February 8, 2019 medical report by Dr. Harris, which, as noted repeatedly, only examined plaintiff's left knee injury, as "further evidence that the Navy did not err by not finding your TMJ condition unfitting." Dr. Harris did not reference plaintiff's TMJ, and just stated that plaintiff had a history of "RENAL FAILURE. SEPSIS. AIR EMBOLISM," (capitalization in original), but did not review the consequences of the renal failure and sepsis. With regard to plaintiff's arguments that his TMJ should have been considered under the "combined effect" policy, the BCNR decision stated that "the Board again found the evidence lacking since there was no evidence your TMJ caused any occupational impairment at the time of your discharge."

Plaintiff asserts that his TMJ impacted his ability to fulfill his duties because he "routinely experienced lock jaw, where his jaw would become rigid, until he massaged it loose," and because he "served in leadership roles, and thus his duties included communicating with subordinates during missions." Plaintiff states that his jaw issues made it "hard to communicate," and "it's pretty painful as well." With regard to his ability to train in the field or deploy worldwide, plaintiff stated at the formal PEB hearing that he was not able "to consume the contents of most military field rations." He elaborated that "I stay away from . . . protein bars and things that are really chewy, and I stick to softer things, you know, like the rice and, you know, the really mushy protein that they give you." Plaintiff further argues that there is documentation of his TMJ disorder in his active duty service medical records, namely the August 23, 2018 diagnosis of TMJ by Dr. Kurt Uyehara and a medical report from November 8, 2018 by Dr. Thomas Randall that "confirmed his TMJ diagnosis, 'possibly due to lack of physical therapy following complicated wisdom teeth extractions in 2014.'" Moreover, in his November 8, 2018 medical report, Dr. Randall recommended that plaintiff manage his symptoms with a "soft

diet, avoid wide opening, engage in passive stretching throughout the day, habit reduction, limit caffeine intake, physical therapy, NSAIDs and occlusal splint." Defendant responds that

> [t]he BCNR also found that the two dental examinations that classified Mr. Fuentes as "Class 1, meaning that your dental status did not create any duty limitations" was also telling evidence that his TMJ syndrome did not lead to any occupational impairments, or effect, that needed to be considered under the combined effect policy.

The BCNR ultimately concluded that plaintiff was not entitled to a correction of his records, nor placement on the disability retirement list for his TMJ syndrome. The BCNR further noted that, in reviewing plaintiff's TMJ rating, "the Board noted that this rating alone would have qualified [plaintiff] for placement on the disability retirement list," however, the BCNR stated that there was no evidence that plaintiff's TMJ was remotely unfitting based on two dental examinations that cleared plaintiff for world-wide deployment with no duty limitations. The BCNR, however, did not address plaintiff's claims that he had difficulty speaking or chewing, which was confirmed by Dr. Kurt Uyehara in 2017 while plaintiff was serving on active duty. The BCNR did not articulate why it found certain dental exams, but not others, persuasive evidence that plaintiff's TMJ disorder did not impair plaintiff's ability to perform his assigned military duties.

Additionally, the BCNR confirmed the formal PEB's decision that plaintiff was only 10 percent disabled, but unfit for continued military service due only to his left knee injury. The BCNR's May 3, 2021 decision does not demonstrate that the BCNR carefully evaluated all of plaintiff's medical records or conditions. Notably, even after defendant's request to remand, plaintiff's agreement to do so, and the court's order to carefully consider all the medical evidence of plaintiff's multiple conditions, it does not appear that the BCNR fully considered whether plaintiff's back and jaw conditions also would interfere with his ability to perform his duties of "carrying heavy weight, running, digging trenches for wire, CFT/PFT [Combat Fitness Test/Physical Fitness Test]," and performing in the field or during deployment. The BCNR's decision failed to demonstrate a rational reason for finding certain items of evidence persuasive, while disregarding or minimizing others. As noted above, the United States Supreme Court has determined that, "[t]he agency must articulate a 'rational connection between the facts found and the choice made.'" Bowman Transp., Inc. v. Ark.-Best Freight System, Inc., 419 U.S. at 285 (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)). A Judge of the United States Court of Federal Claims has indicated, "[c]orrection boards are obligated to examine relevant data and articulate a satisfactory explanation for their decisions." Ward v. United States, 133 Fed. Cl. at 427. Moreover, "'[c]orrection boards are required to make rational connections between the facts found and the choices made.'" Id. (alteration in original) (citation omitted) (quoting Rominger v. United States, 72 Fed. Cl. at 273). Another Judge of the United States Court of Federal Claims stated that if a correction board, "fails to support its decision with a reasoned explanation of an important issue, a remand is appropriate." Rominger v. United States, 72 Fed. Cl. at 273. Given that the BCNR relied so heavily on the February 2019 medical examination by Dr. Harris, which only considered plaintiff's left knee injury (which may have been consistent with the Properly Referred Policy, although contrary to the governing statute and regulations); the

CORB Advisory Opinion (that evaluated only certain of plaintiff's medical records during his service), and which gave particular weight to the Commanding Officer's vague NMA, the court concludes that the May 3, 2021 BCNR decision simply reaffirmed the PEB's decision, which was based on the incomplete review of plaintiff's complete medical records and the MEB's failure to consider whether plaintiff's TMJ and lower back strain impeded his ability to serve because they were not referred to the MEB.

The court concludes that the BCNR acted arbitrarily and capriciously when it failed to address all of plaintiff's medical conditions in his record and whether they each individually or collectively rendered Mr. Fuentes medically unfit for service as a marine rifleman. Therefore, the court orders a second remand to the BCNR during which the BCNR should review all of plaintiff's medical records without the previously self-imposed limitations of the improper, contrary to statute, but now revoked, Properly Referred Policy. Plaintiff is entitled to have a complete review of all his medical conditions, as well as a complete review of his entire medical record by the BCNR upon this second remand, which was not afforded to him during the September 16, 2020 remand to the BCNR and the BCNR's May 3, 2021 decision.

## C O N C L U S I O N

For the reasons described above, the court **DENIES** defendant's motion to dismiss for failure to state a claim. In addition, the cross-motions for judgment on the Administrative Record are **DENIED**. This case is once again remanded to the BCNR for in-depth consideration of plaintiff's entire medical record and all plaintiff's existing medical conditions at the time he was discharged and a more in-depth weighing of the plaintiff's medical records. The court will issue a separate Order to effectuate the remand to the BCNR.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**
